In Re: NOMINATING PETITION OF Robert A. BRADY As Candidate For The Democratic Nomination For The Office Of Mayor Of The City Of Philadelphia.

Objection And Petition To Set Aside The Nominating Petition Of Robert A. Brady As Candidate For The Democratic Nomination For The Office Of Mayor Of The City Of Philadelphia And To Strike His Name From The Ballot In The May 15, 2007 Democratic Primary For The Office Of Mayor Of Philadelphia, Of Objectors Arthur Murphy, Florence Garrett, Bettina A. Bannister, Diane E. Smith, Esquire, Phillip H. Baer, Esquire, and Ellen R. Baer.

Appeal of: Objectors, Arthur Murphy, Florence Garrett, Bettina A. Bannister, Diane E. Smith, Esquire, Phillip H. Baer, Esquire, and Ellen R. Baer.

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.
Decided April 13, 2007.
Publication Ordered May 31, 2007.

Paul R. Rosen and Andrew J. DeFalco, Philadelphia, for appellants.

Stephen A. Cozen, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Arthur Murphy; Florence Garret; Bettina A. Bannister; Diane E. Smith, Esquire; Phillip H. Baer, Esquire; and Ellen R. Baer (collectively, Objectors) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) dismissing their objections and petitions to set aside the Nominating Petition of Robert A. Brady (Candidate) and refusing to strike his name from the May 15, 2007 ballot in the Democratic primary for the Office of Mayor of the City of Philadelphia because his Statement of Financial Interests was not fatally defective.

Objectors are all residents and Democratic electors of the City of Philadelphia. Candidate is currently a member of the United States Congress and has served in that capacity since 1998. This matter arose when Candidate filed a nomination petition to have his name placed on the May 15, 2007 primary ballot as a Democratic candidate for the office of Mayor of the City of Philadelphia. He filed a Statement of Financial Interests (FIS) with the Philadelphia Election Bureau and attached a copy to his nomination papers as re-quired by Section 1104(b)(2) of the Public Officials and Employees Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b)(2).[1] Objectors filed their objections on March 14, 2007, prompting the issuance of a Rule to Show Cause why Candidate's name should not be stricken as a candidate in the primary election. A hearing to set aside the nomination petition was scheduled.

At the hearing, Objectors contended that Candidate failed to disclose all of his financial interests as required under Section 1104(b)(3) of the Ethics Act, 65 Pa. C.S. § 1104(b)(3),[2] and that failure constituted a non-waivable, incurable fatal defect requiring that his nomination petition be set aside and his name stricken from the ballot for the May 15, 2007 Democratic primary for the office of Mayor of the City of Philadelphia. Specifically, Objectors alleged that Candidate failed to disclose on Block 10 of the FIS (indicating direct or indirect sources of income, including, but not limited to income) that he received income associated with positions he held with: 1) the Metropolitan Regional Council United Brotherhood of Carpenters and Joiners of America (Carpenters Union); 2) the City of Philadelphia; 3) the University of Pennsylvania; and 4) the Philadelphia Democratic Campaign Committee, a/k/a the Philadelphia Democratic City Committee.

Because Candidate only indicated on his FIS that he had received income from the United States Government and the Feder-

---

**1.** 65 Pa.C.S. § 1104(b)(2) provides:

Any candidate for county-level of local office shall file a Statement of Financial Interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the Statement of Financial Interests shall also be appended to such petition.

**2.** 65 Pa.C.S. § 1104(b)(3) provides:

No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this chapter *shall*, in addition to any other penalties provided, *be a fatal defect to a petition to appear on the ballot*. (Emphasis added.)

al Credit Union, Candidate testified at the hearing regarding his associations with these groups. Regarding the Carpenters Union, he testified that he was an unpaid administrative assistant to the Carpenters Union and did not receive pension benefits. He stated that $13,500 was put into his pension fund annuity but he not yet received any pension benefits. He also stated that he did not consider the funds in his pension as income. Regarding his position at the University of Pennsylvania, Candidate admitted that he failed to indicate on the FIS that he held a teaching job for which he received $2 per year. Candidate indicated that he had taught at the University for the past 11 years. As for the Philadelphia Democratic City Committee, he testified that it was a non-profit organization of which he was the Chairperson for which he received no remuneration. Candidate did not testify regarding his position with the City of Philadelphia, but James Kidwell, the City of Philadelphia's Deputy Pension Director, testified that Candidate received a pension from the City in 2006 in the amount of $8,726, and his pension had vested.

The trial court reviewed each of the jobs held by Candidate finding the following: the City of Philadelphia pension constituted "governmentally mandated payments or benefits" within the meaning of "income" as defined under Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, which were specifically excluded under Block 10 of the FIS. Regarding Candidate's position as

Chairman of the Board of the Philadelphia Democratic City Committee, the trial court found that the evidence supported Candidate's testimony that he received no salary for his position. Further, while he may have received political contributions in that capacity, he was not required to report those contributions as income on his FIS because Block 11 on the FIS (indicating gifts) specified that political contributions were not to be reported. As to Candidate's position as a Professor at the University of Pennsylvania, he testified that he was paid a salary of $2 per year, $1 for each semester. Because that salary did not meet the $1,300 minimum amount required by Section 1105(b)(5) of the Ethics Act, 65 Pa.C.S. § 1105(b)(5),[3] the trial court found no disclosure was required.

Finally, regarding Candidate's position as a part-time administrative assistant for the Carpenters Union, the trial court determined that the Carpenters Union was a non-profit organization and not a business entity and, therefore, Candidate was not required to make a disclosure in Block 13 of the FIS (indicating office, directorship or employment in any business). However, it went on to determine that Candidate received monthly contributions to his pension and annuity fund from the Carpenters Union in the amount of approximately $13,500 for 2006, and that constituted income which Candidate was required to identify as a source of income in Block 10. Nonetheless, the trial court concluded that this was not a fatal defect that could not be

---

**3.** 65 Pa.C.S. § 1105(b)(5) provides, in relevant part:

    **(b) Required information.** The [statement of financial interests] shall include the following information for the prior calendar year with regard to the person required to file the statement:

           \* \* \*

    (5) The name and address of any direct or indirect source of income totaling in the aggregate $1,300 or more.

cured by amendment and issued an order dismissing Objectors' petitions to set aside Candidate's nominating petition. This appeal by Objectors followed.

On appeal, Objectors raise the following issues:

1. The trial court erred by refusing to apply the fatal defect rule in 65 Pa.C.S. § 1104(b)(3) to remove Candidate from the ballot despite acknowledging that he failed to list the source of his income from the Carpenters Union in Box 10 of the FIS.

2. The trial court erred by finding that Candidate did not have to report his affiliation with the Carpenters Union in Box 13 of the FIS.

3. The trial court erred by finding that payments from Candidate's City of Philadelphia pension were governmentally mandated payments and not income.[4]

Addressing Objectors' first contention— whether the trial court erred by refusing to apply the fatal defect rule in 65 Pa.C.S. § 1104(b)(3) to remove Candidate from the ballot despite acknowledging that he failed to list the source of his income from the Carpenters Union in Box 10 on his FIS,[5] 65 Pa.C.S. § 1102 defines "income" as:

Any money *or thing of value received* or to be received as a claim on future services or in recognition of services rendered in the past, whether in the form of a payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rent, capital gain, reward, severance payment, proceeds from the sale of a financial interest in a corporation, professional corporation, partnership or other entity resulting from termination or withdrawal there-from upon assumption of public office or employment or any other form of recompense or any combination thereof. The term refers to gross income and includes prize winnings and tax-exempt income. The term does not include gifts, governmentally mandated payments or benefits, retirement, pension or annuity payments funded totally by contributions of the public official or employee, or miscellaneous, incidental income of minor dependent children. (Emphasis added.)

As best as we can determine from the record, what Candidate received from the Carpenters Union for his "unpaid administrative assistant" position were payments made by the Carpenters Union on his behalf to maintain his membership in the Carpenters Pension Fund, thereby increasing the years of service upon which his ultimate pension would be calculated. While no one disputes that Candidate did not receive any reportable wages from the Carpenters Union, he did receive "income" as defined in 65 Pa.C.S. § 1102 of the Ethics Act, because he received a *"thing of value"* that was required to be reported.

---

4. As to this issue, we agree that failure to report those payments was not a fatal defect based on the well-reasoned decision of the trial court.

5. Objectors direct our attention to several cases which hold that the fatal defect rule is to be strictly construed and amendments are not permitted. *See In re Nomination Petition of Littlepage,* 589 Pa. 455, 909 A.2d 1235 (2006) (candidate's failure to disclose income from rental properties on FIS was fatal defect); *In re Nominating Petitions of Braxton,* 583 Pa. 35, 874 A.2d 1143 (2005) (disallowing amendment of petition where candidate failed to disclose sources of rental income and names and addresses of creditors holding mortgages of rental properties); *In re Nomination Petition of Anastasio,* 573 Pa. 512, 827 A.2d 373 (2003), *affirmed per curiam without opinion,* 573 Pa. 512, 827 A.2d 373 (2003), (candidate failed to disclose any income even though he knew he had income alleging he confused "regular income" with "supplemental income"); and *In re Petition of Cioppa,* 533 Pa. 564, 626 A.2d 146 (1993) (held prospectively that failure to timely file FIS is fatal defect).

■ However, in the Ethics Commission instructions to candidates on the back of the FIS, the instructions that apply to Box 10 contain a definition that is different than the one contained in the Ethics Act. Those instructions applicable to Box 10 specify:

DIRECT OR INDIRECT SOURCES OF INCOME: This block contains the name and address of each source of $1,300 or more of gross income. List the name and address of all employers (including governmental bodies). Also, include the source, name and address, not the dollar amount, of any payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rental income, capital gain, reward, severance payment, prize winning, and tax exempt income. **DO NOT IN-CLUDE:** gifts, governmentally mandated payments; or retirement, pension or annuity payments funded totally by your own contributions. If you did not receive any reportable income, then check 'NONE'.

These instructions on the FIS are materially different in that they do not include the language "thing of value received." They only require the candidate to list sources of income greater than $1,300, including any payment, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rental income, capital gain, reward, severance payment, prize winning and tax exempt income. Because Candidate did not receive any payment of those types of income—only an increase in years of service to the pension fund—he did not receive any of the listed items that the Ethics Commission directed that a candidate had to report in Box 10 of the FIS.[6] Because a candidate may reasonably rely on the instructions given to him on what is reportable income, it is neither a fatal defect to the petition nor a violation of the Ethics Act when a candidate fills out the form in accordance with those instructions.[7]

■ Objectors argue next that the trial court erred by finding that Candidate was not in violation of the Ethics Act when he failed to list the Carpenters Union as an employer in Block 13 of the FIS.[8] The instructions contained on the form regarding how to fill out Block 13 provide:

Block 13 OFFICE, DIRECTORSHIP OR EMPLOYMENT IN ANY BUSINESS ENTITY: List any office that you hold (for example, President, Vice President, Secretary, Treasurer), any directorship that you hold (through service on a governing board such as a board of directors), and any employment

6. We also note that our Supreme Court has instructed us that due to "the harsh consequence that would accompany a construction that would lead to a finding of a material nondisclosure, ..." that any ambiguity in the definition should be construed most favorably to candidates seeking ballot access. *Carroll*, 586 Pa. 624, 896 A.2d 566, n. 10 (2006).

7. Objectors also contend that the trial court erred when it denied their motion to preclude the Cprek affidavit regarding the pension plan payments made by the Carpenters Union which was submitted after the closing of the record. We note that the Cprek affidavit played no part in our consideration of this issue.

8. Objectors argue that the trial court also erred because it did not find that Candidate was in violation of the Ethics Act when he failed to list the City Committee in Block 13 of the FIS. However, because the trial court determined that any money Candidate received for his campaign were political contributions which he did not need to report pursuant to Block 11, it followed that the City Committee was a political committee, and as Candidate testified, a non-profit organization. Because Objectors offered no proof that the City Committee was a business entity, their argument is without merit.

that you have in any capacity whatsoever, as to any business entity. This block focuses solely on your status as an officer, director or employee, regardless of income.

The trial court determined that because the Carpenters Union was a non-profit organization and not a "business entity," disclosure of the employment relationship was not required. Objectors argue that this determination was wrong because based on our Supreme Court's holding in *In re Carroll*, 586 Pa. 624, 896 A.2d 566 (2006), it was irrelevant whether the Carpenters Union was a non-profit organization for purposes of listing the Carpenters Union in Block 13 as a "business entity" because all affiliations with organizations had to be listed in Box 13. We disagree with Objectors' reading of this case.

In *In re Carroll*, Carroll's nominating petition was objected to because it failed to indicate in Box 13 on the FIS his uncompensated presidency of the non-profit Timothy J. Carroll's Mayors Club of Dallas Borough (Mayors Club).[9] Relying on Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, which defined "business" as "any corporation, partnership, sole proprietorship, firm, enterprise, franchise; association, organization, self employed individual, holding company, joint stock company, receivership, trust *or any legal entity organized for profit,*" our Supreme Court held that a non-profit was not a "business entity" because by definition, a non-profit was not organized for profit. Objectors did not object to Candidate's categorization of the Carpenters Union as a non-profit organization, and they provided no proof that it was otherwise. Relying on the holding in *Carroll* and because there is no dispute that the Carpenters Union was a non-profit organization, the trial court properly

determined that Candidate was not in violation of the Ethics Act by not listing the Carpenters Union in Box 13.

While we have found that there is no fatal defect in Candidate's FIS filing, we want to make the following observations:

First, it is clear that payments made by the Carpenters Union on Candidate's behalf are the type of "thing of value" required to be reported by the Ethics Act. If the Ethics Commission had not limited what is to be included in income, those payments would have to have been disclosed. The Ethics Commission should revise the instructions for Box 10 of the FIS to bring them into conformity with the Ethics Act.

Second, the limited definition of what is a "business" in the Ethics Act should be expanded to include large non-profits, such as hospitals, foundations, museums, unions, business associations and such, because, while they do not have profits *per se*—calling them instead revenues over expenses—nonetheless, they want to influence legislation and/or obtain funds from the public treasury.

Third, there is not, as suggested by Candidate, a good faith defense by a candidate to rely on advice of counsel as to whether an item is not reportable—the only appropriate advice that counsel can give is that when in doubt, report anything because a candidate cannot be removed from the ballot by over-reporting.

Finally, the challenges brought by objectors to candidates' petitions due to purported defects in FIS disclosures are increasing substantially every election cycle. Either we should go back to the view enunciated *In re Nomination Petition of Anastasio* that all defects are fatal or we

---

9. The Court determined that *Anastasio* and *Benninghoff* were not helpful in deciding this case because *Carroll* involved the failure to disclose non-financial associations rather than the failure to disclose a direct source of income.

should allow, as suggested by the trial court, liberal amendment of FIS [10] Either way, candidates will then be treated the same and the outcome will not be dependent on the unique factual circumstances of each case that requires judges to find whether a candidate's failure to disclose crosses some unknown line.

Accordingly, for the foregoing reason, because Objectors have not shown that Candidate's FIS statement contains a fatal defect, the opinion of the trial court is affirmed.

### ORDER

AND NOW, this *13th* day of *April,* 2007, the order of the Court of Common Pleas of Philadelphia County dated March 27, 2007, denying the Petition to Set Aside the Nomination Petition of Robert A. Brady is affirmed.

**10.** Of course, outside of the frenzy of election process, the Ethics Commission should then investigate, take testimony and impose sanctions on the Candidate based on whether the non-disclosure was serious or not, intentional or not, and impose or seek an appropriate sanction, including criminal ones.