Edward G. **RENDELL**, Governor of Pennsylvania, and **Michael DiBerardinis**, Pennsylvania Secretary of Conservation and Natural Resources, Petitioners

v.

**PENNSYLVANIA STATE ETHICS COMMISSION, Respondent.**

Edward G. Rendell, Governor of Pennsylvania, and Kathleen A. McGinty, Pennsylvania Secretary of Environmental Protection, Petitioners

v.

Pennsylvania State Ethics Commission, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.

Decided Oct. 3, 2008.

---

Ralph G. Wellington, Philadelphia, for petitioners.

Robin M. Hittie, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY President Judge LEADBETTER.

Petitioners, Edward G. Rendell, Governor of the Commonwealth of Pennsylvania (Governor), Michael DiBerardinis, the Secretary of the Department of Conservation and Natural Resources (DCNR) (Secretary DiBerardinis), and Kathleen A. McGinty, the Secretary of the Department of Environmental Protection (DEP) (Secretary McGinty), have filed an Application for Summary Relief in this court's original jurisdiction, seeking declaratory judgment regarding the interpretations and applications of the Public Official and Employee

Ethics Act (Ethics Act)[1] in the above-consolidated matter with respect to two issues, namely, whether non-profit organizations may be included in the definition of "business" in Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102; and, if so, whether the Ethics Act requires the Governor to appoint a person outside the Department head's chain of command when the Department head has a conflict of interest.

In response, the Ethics Commission has filed an Answer to the Governor's Application for Summary Relief and also a Cross–Application for Summary Relief requesting that this court enter judgment in its favor with respect to the same two issues now before us.

Before addressing these issues, a review of the underlying facts is necessary for a proper understanding of our disposition of this case. Pursuant to Section 1107 of the Ethics Act, 65 Pa.C.S. § 1107,[2] General Counsel Barbara Adams requested an opinion or advice of counsel from the Ethics Commission regarding Secretary McGinty. In her letter regarding Secretary McGinty, Adams explained that DEP administered many grant programs to assist businesses, non-profit entities and individuals with environmental issues, one of which was the Growing Greener Watershed Restoration and Protection Grant Program (Growing Greener). All grants under the Growing Greener program are awarded through a publicly noticed, competitive process that requires the submission of a grant application, evaluation of the application by DEP personnel, and a decision to award or not award a grant

under the program. The Pennsylvania Environmental Council (PEC), a non-profit organization, received more than $6.5 million in grants from DEP between 1995 and 2002. Enterprising Environmental Solutions, Inc. (EESI), an organization established and controlled by PEC, has received more than $600,000.00 in grants from DEP. Adams stated that DEP anticipated that both PEC and EESI will continue to seek new grants under the Growing Greener program as well as possibly seeking amendments to existing Growing Greener grants. Adams further explained in her letter that Dr. Karl Hausker, a nationally recognized consultant on environmental matters and Secretary McGinty's husband, has in the past acted as a consultant to both PEC and EESI on projects for which they were awarded Growing Greener grants, and that DEP expected Dr. Hausker to be asked to do future consulting work for either PEC, EESI, or some other grant recipient. Adams explained that Secretary McGinty's role was limited to reviewing and approving a list of proposed grant awards which had already been initially approved by other DEP officials, including the Regional Watershed Managers, the Central Office Watershed Management Staff, the District Mining Office Watershed Managers, and staff from the Grants Center. Given these facts, Adams requested an opinion as to whether Secretary McGinty's involvement in the grant award process would give rise to a conflict of interest under Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a).[3]

1.  65 Pa.C.S. §§ 1101–1113.

2.  This Section provides in pertinent part: "In addition to other powers and duties prescribed by law, the commission shall: ... (10) [i]ssue to any person upon such person's request or to the appointing authority ... of that person upon the request of such appoint-

ing authority ... an opinion with respect to such person's duties under this chapter." 65 Pa.C.S. § 1107.

3.  Section 1103(a) states that, "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest."

In a separate letter, Adams requested an opinion or advice of counsel from the Ethics Commission regarding Secretary DiBerardinis. Adams stated that DCNR, through its Bureau of Recreation and Conservation, has awarded numerous grants under the Community Conservation Partnerships Program to municipalities and non-profit organizations alike for a variety of community conservation projects. Similar to the grants awarded by DEP under the Growing Greener program, the Community Conservation grants are awarded through a publicly noticed, competitive process that involves the submission of a grant application, evaluation by DCNR personnel, and a decision to award or not award a grant under the program. One such grant recipient was the Pennsylvania Horticultural Society (PHS), a non-profit organization, which has received $1.5 million for a tree cover program called "TreeVitalize." Adams further stated that one of PHS's fourteen managers is Joan Reilly, the wife of Secretary DiBerardinis, and that Reilly manages the PHS program called "Philadelphia Green," a program which supports community gardens, neighborhood parks and high-profile public green spaces in Philadelphia, but which does not manage or have any direct involvement in the TreeVitalize program. Again, based on these facts, Adams requested an opinion as to whether it would be a violation of the Ethics Act for Secretary DiBerardinis to participate in the grantmaking process.

On April 30, 2007, the Ethics Commission issued two advisory opinions in response to Adams's letters. In the McGinty Opinion, the Ethics Commission concluded that Secretary McGinty would

have a conflict of interest if she participated in the grantmaking process and that such participation would constitute a use of her authority which would result in a private pecuniary benefit under the Ethics Act. The Ethics Commission recommended that, in order for Secretary McGinty to avoid a conflict of interest under the Ethics Act, "the Governor could designate someone not within the Secretary's chain of command to perform the Secretary's role as to the prospective grants in question, as well as the grant applications of competitors for the Growing Greener Watershed Program grant monies." McGinty Opinion, Opinion 07–009, at 12. The Ethics Commission also stated that Secretary McGinty could not select the person to take her place in the grantmaking process and that she would need to be "removed/insulated from any involvement in the grant process in question, as well as any access to confidential/non-public information involving the grant process, such as, for example, ratings, evaluations and recommendations by DEP staff members involved in the grant process." Id.

In the second opinion, the DiBerardinis Opinion, Opinion 07–010, the Ethics Commission concluded that Secretary DiBerardinis would have a conflict of interest under the Ethics Act as to a proposed grant from DCNR to PHS because PHS employs his wife. Further, the Ethics Commission concluded that PHS, as a non-profit organization, was a "business" as that term is defined in Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102.[4] The Commission concluded that Secretary DiBerardinis could avoid a conflict of interest under the Act if the Governor "would

---

4. "Business" is defined by the Act as: "[a]ny corporation, partnership, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust or any legal entity organized for profit." 65 Pa.C.S. § 1102.

designate someone not within the Secretary's chain of command to perform the Secretary's role as to the proposed PHS grant as well as the grant applications of competitors for the grant program grant monies." DiBerardinis Opinion, Opinion 07–010, at 12. In addition, the Commission recommended steps similar to that in the McGinty Opinion for Secretary DiBerardinis to avoid a conflict of interest.

The Governor and each Secretary filed a "Petition for Review in the Nature of an Appeal of an Opinion of the Pennsylvania State Ethics Commission and in the Nature of an Action for Declaratory Judgment" with respect to both advisory opinions. A responsive Motion to Quash and Preliminary Objections were filed by the Commission and, thereafter, this court granted the Commission's Motion to Quash and also overruled in part and sustained in part the Commission's Preliminary Objections. We allowed the Governor's declaratory judgment action to proceed as to the limited issues of whether a non-profit organization may be included in the definition of "business" under the Ethics Act and whether, when a department head is affected by a conflict of interest, the Ethics Act requires the Governor to appoint a person outside the department head's chain of command in order to avoid the conflict of interest.

■ Summary relief in the form of judgment on the pleadings pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1532(b), states that we "may on application enter judgment if the right of the applicant thereto is clear." In *Fisher v. Commonwealth*, 926 A.2d 992, 994 n. 6 (Pa.Cmwlth. 2007) (citations omitted), we stated the standard under which we review such applications:

Summary relief is proper where the moving party establishes the case is clear and free from doubt, there are no genuine issues of material fact to be tried, and the movant is entitled to judgment as a matter of law. When ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party. We may only consider the pleadings themselves and any documents properly attached thereto. A party's motion for judgment on the pleadings will only be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law.

Both sides having agreed that there are no issues of material fact and that the issues are purely legal, we will proceed to a review of the cross-applications for summary relief.

■ The Governor argues that a non-profit organization is not a "business" under the Ethics Act and that we are bound by the Supreme Court's decisions in *In re Nomination Petition of Timothy J. Carroll*, 586 Pa. 624, 896 A.2d 566 (2006) (finding that the Act did not require Carroll to disclose his "interest" in the non-profit Mayors Club), and *Pilchesky v. Cordaro*, 592 Pa. 15, 922 A.2d 877 (2007) (candidate failed to disclose his directorship in a for-profit community bank, and to that extent, candidate's reliance on *Carroll* was misplaced because that case explained that a non-profit was not a "business"). The Governor further argues that the Commission is not free to sidestep the holding in *Carroll* and that unless or until the Supreme Court overrules its own precedent or the legislature sees fit to amend the Ethics Act, the fact remains that *Carroll* is controlling.

According to the Commission, *Carroll* is not controlling, because there the court did not definitively hold that non-profits are not "businesses" under the Ethics Act; the court merely construed the definition of "business" under the Ethics Act in a way most favorable to the candidate in order to promote the express purpose of the Election Code, which is to protect a candidate's right to run for office and, concomitantly, the voters' right to elect the candidate of their choice. Moreover, the Commission argues that because *Carroll* and *Pilchesky* involve election matters, we can distinguish them from conflict of interest issues. Specifically, because election matters are decided in the narrow context of the Election Code and during the frenzy of the election season, the Commission argues that their holdings should be limited to election cases. The Commission also argues that with a conflict of interest, we must keep in mind the broader purpose of the Ethics Act, which seeks to "strengthen the faith and confidence of the people ... in their government ... by assuring [them] of the impartiality and honesty of public officials,"[5] and accordingly, this court should construe the definition of "business" to include non-profits in order to promote complete financial disclosure.

Finally, the Commission argues that, as the administrative agency charged with overseeing the implementation of the Ethics Act, its interpretation of the definition of "business" is entitled to great deference. Therefore, the Commission argues, had the court in *Carroll* known that since 1989 the Commission has interpreted the definition of "business" in the Ethics Act to include non-profits, citing *Confidential Opinion*, 89–007 (1989); *McConahy Opinion*, 96–006 (1996); *Soltis–Sparano*, Order 1045 (1997); and *Maduka*, Order 1277

(2003), the court would have deferred to its interpretation and ruled accordingly.

In his reply brief, the Governor argues that the Commission's attempts to distinguish *Carroll* and its progeny on the grounds that they are election cases, are unavailing. This is because, the Governor asserts, the Commission ignores the fact that the statute being interpreted in each instance is Section 1102 of the Ethics Act and its definition of "business," and there is no legal basis to support the Commission's suggestion that the legislature intended the definition to vary depending upon whether it is an election case or a conflict of interest case. Additionally, the Governor argues that, while the substantive focus of the Ethics Act is on complete disclosure of financial interests, there is also a compelling need for "clear guidelines ... in order to guide public officials and employees in their actions." 65 Pa. C.S. § 1101.1(a). The Governor further argues that the plain language of the Ethics Act and the applicable rules of statutory construction all compel the conclusion that non-profit organizations are not within the definition of "business" as found in Section 1102 of the Ethics Act. Lastly, the Governor argues that, where the Supreme Court has interpreted a statute, deference to an agency's contrary interpretation is inappropriate. *See Carbondale Nursing Home, Inc. v. Dep't of Pub. Welfare*, 120 Pa.Cmwlth. 186, 548 A.2d 376, 378 (1988).

■ The Ethics Act is a remedial statute designed to promote the public trust in their government and in their public officials and employees by requiring complete financial disclosure and delineating clear guidelines to guide those public officials and employees in their actions. Section 1103 of the Act sets forth a number of restricted activities that a public official is

---

5. *See,* 65 Pa.C.S. § 1101.1(a).

to avoid, such as a conflict of interest. Section 1102 of the Ethics Act, entitled "Definitions" provides in pertinent part:

"Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated....

65 Pa.C.S. § 1102. The definitions of "business" and "business with which he is associated" also appear in this same section, to wit:

"Business." Any corporation, partnership, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust or any legal entity organized for profit.

"Business with which he is associated." Any business in which the person or a member of the person's immediate family is a director, officer, owner, employee or has a financial interest.

65 Pa.C.S. § 1102.

In *Carroll*, the court was faced with the issue of whether Carroll's failure to disclose his unpaid public position as a board member and Assistant Secretary of the Dallas Area Municipal Authority (DAMA) and his uncompensated presidency of the non-profit organization "Timothy J. Carroll's Mayors Club of Dallas Borough,"

was fatal to his nomination petition under Section 1104(b) of the Ethics Act, 65 Pa. C.S. § 1104(b).[6] After noting that the Ethics Act "is not shrouded in mystery" and that, "the substantive focus of this declaration is on financial interests, and particularly, how complete disclosure of financial interests may further the 'public trust,' [and] 'strengthen the faith and confidence of the people' in their government," *Carroll*, 586 Pa. at 637–38, 896 A.2d at 573–74, our Supreme Court concluded that, "the [Ethics] Act did not require Carroll to disclose his 'interest' in the non-profit Mayors Club." *Id.* at 640, 896 A.2d at 575. Although acknowledging that there were two possible constructs of the modifying phrase "organized for profit" in the definition of "business" in Section 1102, the court agreed that Carroll's reading of the statute to exclude non-profits from the definition of "business" was "in keeping with the purpose of the legislation announced in Section 1101.1" and that it was clear that this definition "intends to cover only for-profit entities." *Id.* at 638, 639 n. 10, 640, 896 A.2d at 574 n. 10, 575.

*Carroll* was followed shortly thereafter by *Pilchesky*, in which the Supreme Court reinforced its decision in *Carroll* when it ordered candidate Cordaro's name stricken from the primary ballot because he failed to disclose on his Statement of Financial Interests his position on the Board of Directors of Landmark Community Bank, a *for-profit* entity. In a footnote, the Supreme Court explained:

Landmark Community Bank's status as a for-profit entity renders the Common-

---

**6.** Section 1104(b) provides in pertinent part that, "[a]ny candidate for a State-level office shall file a statement of financial interests ... with the commission ..." and that, "[n]o petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial in-

terests as set forth in paragraphs (1) and (2)...." 65 Pa.C.S. § 1104(b)(1) and (3). Section 1105(b)(8) requires the candidate to disclose on the statement, "[a]ny office, directorship or employment of any nature whatsoever in any *business* entity." 65 Pa.C.S. § 1105(b)(8) (emphasis supplied).

wealth Court's and the trial court's reliance upon *In re Nomination Petition of Carroll*, 586 Pa. 624, 896 A.2d 566 (2006), misplaced. *See id.* at 574–76 (explaining that a non-profit organization does not constitute a business entity under the Ethics Act, removing it from the reporting requirements of Section 1105(b)(8)).....

592 Pa. at 16 n. 1, 922 A.2d at 877 n. 1.

We followed *Carroll* in *In re Nominating Petition of Brady*, 923 A.2d 1206, 1211 (Pa.Cmwlth.), *app. den.*, 591 Pa. 738, 921 A.2d 498 (2007), in which we stated that, "our Supreme Court held that a non-profit was not a 'business entity' because by definition, a non-profit was not organized for profit[,]" and therefore, "because there is no dispute that the Carpenters Union was a non-profit organization, the trial court properly determined that Candidate was not in violation of the Ethics Act by not listing the Carpenters Union in Box 13."

We recognize the merit in the Commission's argument that different policies underlie the Act's requirements in connection with candidates' financial interest statements and with avoidance of conflicts of interests by public officials. Nonetheless, while those policies may vary, the term "business" is specifically defined in the Act and our Supreme Court has unequivocally interpreted that definition to include only business entities. We are not free to disregard our Supreme Court's clear holding on this issue.

█ Finally, we reject the Commission's arguments that the decision in *Carroll* should be limited to election cases because the court was misinformed of the Commis-

sion's own opinions in which it had interpreted the definition of "business" in the Ethics Act to include non-profits.[7] We decline to speculate about whether our Supreme Court might have reached a different result if it had been aware of the Commission's view because, for our purposes, that is entirely irrelevant. We are bound by our Supreme Court's *holding*, regardless of how it came to its conclusion.

We must also conclude, therefore, that the Secretaries do not have a "conflict of interest" as that term is defined Section 1102 of the Ethics Act. That definition is concerned with the "[u]se by a public official ... of the authority of his office or employment or any confidential information received ... for the private pecuniary benefit of himself, a member of his immediate family or a *business* with which he or a member of his immediate family is associated[,]"[8] and because there is no "business" involved where the grants are being made to non-profit entities, it follows there is no conflict of interest.[9]

For the reasons stated above, we grant Petitioners' application for summary relief and declare that a non-profit corporation is not included in the definition of "business" under Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102.

### *O R D E R*

AND NOW, this 3rd day of October, 2008, the application for summary relief filed by Edward G. Rendell, Governor of Pennsylvania, and Michael DiBerardinis, Secretary of Conservation and Natural Re-

---

**7.** Prior opinions of the Commission are not binding upon the court. *See, e.g., Carbondale Nursing Home, Inc. v. Dep't of Pub. Welfare*, 120 Pa.Cmwlth. 186, 548 A.2d 376, 378 (1988).

**8.** 65 Pa.C.S. § 1102.

**9.** Because there is no conflict of interest, we need not reach Petitioners' second issue.

sources, and Kathleen A. McGinty, Secretary of Environmental Protection in the above captioned matter, is hereby GRANTED. The application for summary relief filed by the Pennsylvania State Ethics Commission is DENIED.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

I respectfully disagree with the majority. I believe that the definition of "business" in Section 1102 of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1102, should be read as including non-profit entities. I do not believe the Ethics Act requires the Governor to appoint a person outside a department head's chain of command in order for that department head to avoid a conflict of interest. Therefore, I would grant each party's application for summary relief in part and deny each in part.

First, I believe that the definition of "business" in Section 1102 of the Ethics Act should, for purposes of the conflict of interest provision found at Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a), be interpreted to include non-profit entities. As the Supreme Court recognized in *In re Carroll*, 586 Pa. 624, 638 n. 10, 896 A.2d 566, 574 n. 10 (2006), the definition of "business" found in Section 1102 is ambiguous with regard to whether non-profit organizations fall within the definition. Where statutory language is ambiguous, courts may consider the intent of the Legislature. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c). This intent may be discerned from, among other things, "[t]he mischief to be remedied.... [t]he object to be attained.... [and t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(3)-(4), (6). Each of these factors weighs in favor of holding that, for purposes of the Ethics Act's conflict of inter-

est provision, the term "business" includes non-profit entities. The mischief the Ethics Act seeks to remedy is the conflict of the financial interests of public officials with their public duties, and the object the Ethics Act seeks to obtain is public confidence in government:

> In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this chapter shall be *liberally* construed to promote complete financial disclosure as specified in this chapter.

Section 1101.1(a) of the Ethics Act; 65 Pa.C.S. § 1101.1(a) (emphasis added). A *liberal* construction of the definition of "business," seeking to assure the people of this Commonwealth that the financial interests of public officers do not conflict with the public trust, would include non-profit organizations in the definition of "business" for purposes of the conflict of interest provision at Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a). Non-profit organizations include not only small, community organizations, but also large, state-wide, and even national organizations with significant economic influence and political clout. Employees and officers of non-profit organizations may receive substantial income from those organizations. *See, e.g., Aramony v. United Way of America*, 254 F.3d 403, 409 (2d Cir.2001) (United Way of America paid its CEO over $350,000 in 1990.); *Powell v. American Red Cross*, 518 F.Supp.2d 24, 29 n. 3 (D.D.C.2007) (The American Red Cross pays nurses in its employ up to $87,000 per

year.). It is inconsistent to allow one public official who earns $90,000 from a corporation as its employee or officer to conduct the Commonwealth's business with that corporation while a different public official earning a similar salary may not conduct Commonwealth business with a different corporation merely because one corporation is non-profit and the other is for-profit. Both officials will be subject to the same appearance of impropriety and the same pecuniary strain on their loyalties to their public duties. The only consistent rule is, for purposes of Section 1103(a)'s conflict of interest provision, to read the ambiguous definition of "business" in Section 1102 as including non-profit entities.

I respectfully disagree with the majority's view that we are bound in this matter by *Carroll* and its progeny. The issue presented in *Carroll* was whether this Court erred in disqualifying Carroll from appearing on the ballot because he failed to "disclose *non-financial* associations on a Statement of Financial Interests." *Carroll*, 586 Pa. at 637, 896 A.2d at 573. The non-profit entity at issue in *Carroll* was the "Timothy J. Carroll's Mayors Club of Dallas Borough" (Mayors Club), a charitable organization which Carroll created "to fund community projects." *Id.* at 628–29, 896 A.2d at 568–69. Carroll received no financial benefit from the organization. Quite the opposite, he donated the salary from his position as the Mayor of Dallas Borough to the Mayors Club. *Id.* at 629, 896 A.2d at 569. The Supreme Court stressed that "[t]he [Ethics] Act could not be any clearer that the concern is with *financial* interests," and that it did not, therefore, "require Carroll to disclose his 'interest' in the non-profit Mayors Club." *Id.* at 640, 896 A.2d at 575.

This case, however, shows that even though an organization is non-profit, indi-

viduals may still have a financial interest in it. DEP Secretary McGinty's husband was paid by PEC for his consulting work, and PEC received a $291,102 grant from DEP. DCNR Secretary DiBerardinis's wife is a paid employee of PHS, and PHS received a $1.5 million "TreeVitalize" grant from DCNR. The Secretaries' spouses and the organizations which pay them for their work have strong financial interests in the agency grants. Thus, the concern with financial interests, which was not present in the small, non-profit "Mayors Club" in *Carroll*, is definitely present in the non-profit corporations involved here. In this case, we are determining whether there is a conflict of interest when large financial grants are given by government agencies to non-profit corporations who employ the spouses of the Secretaries of those government agencies. I believe that, under the Ethics Act, and under the Supreme Court's decision in *Carroll*, that is a different inquiry. Given the Supreme Court's emphasis on financial interests in *Carroll*, it follows that these non-profit entities with great financial interests in government grants should be considered businesses for purposes of the conflict of interest provisions of the Ethics Act.

Moreover, the cases to which the majority cites—*Carroll*; *Pilchesky v. Cordaro*, 592 Pa. 15, 922 A.2d 877 (2007); and *In re Nominating Petition of Brady*, 923 A.2d 1206 (Pa.Cmwlth.) *petition for allowance of appeal denied*, 591 Pa. 738, 921 A.2d 498 (2007)—are all election cases involving statements of financial interest. In cases involving statements of financial interest, both the Ethics Act and the Pennsylvania Election Code[1] (Code) apply, and the two are to be read *in pari materia*. *In re Nomination Petition of Paulmier*, 594 Pa. 433, 442, 937 A.2d 364, 369 (2007). There-

---

1. Act of June 3, 1937, P.L. 1333, *as amended*   25 P.S. §§ 2600–3591.

fore, in election cases, the Ethics Act's mandate to promote full disclosure is tempered by the Code's purpose of protecting voter choice. *Id.* In this context, the Supreme Court's choice in *Carroll* to construe the definition of "business" in Section 1102 not to apply to non-profit entities may be read as a compromise between the purpose of the Ethics Act and that of the Code. The Court, thus, did not disqualify a candidate for failing to disclose purely volunteer activities with a non-profit organization. In the context of considering conflicts of interest, however, there is no interest in protecting voter choice. The only purpose at issue is that of the Ethics Act, which is to assure the people of this Commonwealth that the financial interests of their representatives and public servants will not conflict with their duties to the Commonwealth.

Because I would find that the definition of "business" includes the types of entities involved in this case, I would, therefore, also reach another issue raised in this case, which the majority does not reach. In its advisory opinions to the Secretaries, the Commission stated that in order for each Secretary to avoid a conflict of interest, the Governor could "designate someone not within the Secretary's chain of command to perform the Secretary's role as to" the grantmaking processes at issue in each case. (McGinty Opinion, Opinion 07–009, at 12; DiBerardinis Opinion, Opinion 07–010, at 12.) In each opinion, the Commission also stated that neither Secretary could have any role in selecting the person who would discharge the Secretary's duties. I do not believe that when a department head is subject to a conflict of interest under the Ethics Act, the Ethics Act requires that the Governor appoint an individual outside that head's chain of command in order for the head to avoid the conflict. I believe that it is sufficient for the head to allow the duties which subject him to the conflict of interest to be performed by the person next in authority to the head, so long as that individual is not, himself, subject to a conflict of interest. It is a conflict of interest for a public official to use his authority "for the private pecuniary benefit of himself" or a related business. 65 Pa.C.S. § 1102. I agree that the Commission can determine that participation in the grantmaking process would be a use of the department head's authority. However, where the department head recuses himself and instead appoints an individual within his chain of command to perform his duties in relation to the grant, so long as he does not attempt to influence or direct the individual with regard to how those duties should be performed, he would not be "using" his authority. Such recusal would be consistent with other parts of the Ethics Act, such as Section 1103(j), which allows a public official otherwise required to vote on a matter to recuse himself when participating in the vote would constitute a conflict of interest. Moreover, we note that conflicts of interest, as defined in the Ethics Act, are not imputed from an individual's superior to that individual. Therefore, since the individual to whom the department head's authority devolves would not be conflicted, it is difficult to see how the department head himself would be subject to a conflict of interest in allowing such devolution by recusing himself.

For these reasons, I would grant the application for summary relief filed by Petitioners in part, deny it in part, and I would grant the application for summary relief filed by the Commission in part and deny it in part.

Judge LEAVITT joins in this dissenting opinion.