COMMONWEALTH of Pennsylvania,
Appellee

v.

Charles P. McCULLOUGH, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 22, 2013.

Filed Feb. 27, 2014.

Jon Pushinsky, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Keaton Carr, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, J., and MUSMANNO, J.

OPINION BY PANELLA, J.

Appellant, Charles P. McCullough, appeals from the denial of his pretrial motions to dismiss criminal charges, pursuant to this Court's grant of McCullough's *pro se* petition for review on May 23, 2012. After careful review, we affirm the trial court's pre-trial rulings.

The Commonwealth has charged McCullough with 24 crimes[1] arising from his actions as an agent and co-trustee for Shirley Jordan, now deceased. Jordan was approximately 90 years old, a widow without any children, and living in a senior living center when she executed a springing power of attorney[2] in favor of McCullough. It is estimated that Jordan had assets of approximately fourteen million dollars at the time.

According to the Commonwealth, the condition precedent contained in the springing power of attorney was never met; however, McCullough began to act as Jordan's agent. Of most concern to this appeal, one action taken by McCullough as Jordan's agent was to open a trust funded by Jordan's assets. McCullough named himself as co-trustee with PNC Bank.

The Commonwealth alleges that after this point, McCullough intentionally obfuscated his roles as trustee and agent, creating confusion and concern for third-parties, including PNC. In this dual role, McCullough arranged for payments to his sister[3] to perform personal care services for Jordan. The Commonwealth alleges that these payments were for an hourly rate that far exceeded the rate for these types of services on the open market. Furthermore, McCullough arranged for a secret donation of $10,000 to a charity of which his family has a close connection. Finally, the Commonwealth alleges that McCullough, a licensed attorney, inappropriately billed, and approved inappropriate bills from other attorneys, from Jordan's estate.

Over two years passed between the time the Commonwealth filed its criminal information and the time that McCullough filed the motion to dismiss that forms the basis of this appeal. In his motion, McCullough argued, *inter alia*, that the Commonwealth's charges were subject to collateral estoppel based upon the Orphans' Court's approval of the final account of Jordan's estate, and that the Commonwealth's allegations could not support a *prima facie* case that he had failed to disclose financial interests. The trial court denied McCullough's motion to dismiss, and this appeal followed.

On appeal, McCullough raises the following issues for our review:

I. Is the Commonwealth collaterally estopped or otherwise barred by the constitution and/or statute from premising its criminal prosecution of McCullough on the relitigation of critical issues of fact and law that have been finally determined in McCullough's favor through prior Orphans' Court proceedings properly concerning matters at the heart of the Commonwealth's case against McCullough?

II. May the Commonwealth base criminal charges against McCullough on his failure to report a source of income received in 2007 on a statement of financial interests form requiring him to identify his 2006 sources of income where McCul-

---

1. Nine counts of misapplication of entrusted property, seven counts of theft by unlawful taking, two counts of theft by deception, one count of unsworn falsification to authorities, one count of tampering with public records, one count of failure to disclose financial interests, one count of conspiracy, and two counts of false reports to law enforcement officers.

2. A springing power of attorney contains one or more conditions that must be satisfied before the designated agent has the legal authority to act as the principal's agent. *See* BLACK'S LAW DICTIONARY 1210 (8th ed. 2004).

3. Kathleen McCullough's related appeal is docketed at 835 WDA 2012.

lough complied with the form instructions then in effect?

Appellant's Brief, at 3.

■ In his first issue on appeal, McCullough contends that the charges based on theft and misappropriation of funds are subject to collateral estoppel.[4] Collateral estoppel claims are questions of law, and are subject to *de novo* review; our scope of review is plenary. *See Commonwealth v. Barger,* 956 A.2d 458, 461 (Pa.Super.2008) (*en banc*), *appeal denied,* 602 Pa. 655, 980 A.2d 109 (2009). Collateral estoppel "simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties...." *Commonwealth v. Holder,* 569 Pa. 474, 480, 805 A.2d 499, 502 (2002).

■ Specifically, McCullough argues that the Orphans' Court's confirmation of the final account of Jordan's estate resolved the issue of the propriety of any payments made from her assets while acting as her agent and cotrustee. Initially, we conclude as a matter of law that the Commonwealth of Pennsylvania was not a party to the Orphans' Court proceedings that led to the confirmation of the final account of Jordan's estate. McCullough argues that an Assistant District Attorney ("ADA") testified that the Commonwealth was a party. Our review of the indicated testimony reveals that the ADA's testimony was not unequivocal, nor was it meant to be the outright admission that McCullough contends it is. To the contrary, the ADA's testimony was a mere acknowledgement that the Commonwealth took steps to ensure the sufficient preservation of Jor-

dan's estate to pay off possible future criminal restitution claims. Furthermore, the same ADA later testified that the Commonwealth was not a party to the Orphan's Court proceeding.

■ In any event, we conclude that the ADA's testimony is ultimately irrelevant, as the question of whether the Commonwealth was a party to the Orphans' Court proceeding is a pure question of law. *See Barger, supra.* As McCullough has identified no ruling or filing in the certified record that made the Commonwealth a party to the Orphans' Court proceeding, we conclude that it was not a party. As such, collateral estoppel cannot apply.

■ McCullough further argues that a 1972 amendment to the Probate, Estate and Fiduciaries Code (the "Code"), 20 Pa. Cons.Stat.Ann. §§ 101–8815, estops the Commonwealth's charges in this case. Section 3358 of the Code prohibits a collateral attack on an Orphans' Court decree, absent a lack of jurisdiction for the Orphans' Court: "No decree entered pursuant to this code shall be subject to collateral attack on account of any irregularity if the court which entered it had jurisdiction to do so." 20 Pa. Cons.Stat.Ann. § 3358. However, we conclude that the instant criminal charges do not constitute a collateral attack on the Orphans' Court's confirmation of the final account of Jordan's estate. No matter the outcome of this litigation, the decree of confirmation will stand. If McCullough is acquitted, the decree still stands as final adjudication of the estate. Similarly, if McCullough is convicted, the decree still stands as a final adjudication of the estate; the only differ-

---

4. McCullough also includes an argument that the Commonwealth's case fails because Jordan's guardian consented to all the payments that form the basis of the Commonwealth's theft, fraud, and misappropriation charges.

*See* Appellant's Brief, at 54–57. However, this argument is waived, as it is not contained, or fairly suggested by, his explicit statement of issues for review. *See* Pa.R.A.P., Rule 2116.

ence is that McCullough will have been found to have committed a crime. As such, we conclude that the Probate, Estates and Fiduciary Code does not act to prohibit this prosecution.

McCullough also challenges the trial court's denial of his motion to dismiss the charges based upon an alleged failure to report income in a statement of financial interests. Initially, we observe that the exact nature of McCullough's argument on appeal is unclear. Both he and the Commonwealth state that his challenge is one of a purely legal nature, subject to *de novo* review. *See* Appellant's Brief, at 2; Appellee's Brief, at 1. However, our review of McCullough's argument indicates that it is best described as contending that the Commonwealth's allegations have failed to make out a *prima facie* case:

> The trial court also erred in allowing the Commonwealth to pursue 3 counts arising out of McCullough's failure to report a source of income received in 2007 on his 2006 Statement of Financial Interest form. McCullough completed the form in accordance with the then applicable form instructions. The court disregarded these instructions and ignored controlling case law in accepting the Commonwealth's argument that McCullough was required to report the sources of income received in 2007 on a form requiring the identification of 2006 income sources.

Appellant's Brief, at 32. As such, we will review McCullough's challenge pursuant to the standard of review for orders denying writs of *habeas corpus*.

 "The decision to grant or deny a petition for writ of *habeas corpus* will be reversed on appeal only for a manifest abuse of discretion." *Commonwealth v. Winger*, 957 A.2d 325, 327 (Pa.Super.2008) (citation and brackets omitted).

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Id.*, at 328 (citation omitted). Our scope of review is limited to deciding whether a prima facie case was established:

> [T]he Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in **allowing the case to go to the jury.** When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.

*Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa.Super.2012) (citation omitted). "[T]he prima facie case merely requires evidence of the existence of each element of the crime charged." *Id.* (citation omitted). "The weight and credibility of the evidence is not a factor at this stage." *Id.*

Both parties agree that the essential facts of this issue are not in dispute. *See* Appellant's Brief, at 62; Appellee's Brief, at 63. In 2007, McCullough ran for an elected position on the Allegheny County Council. As a candidate for the position, he was required to fill out a "Statement of Financial Interest Form" ("SOFI") and

fully disclose his 2006 income. One source of income not included on McCullough's SOFI was a $44,000 payment from Jordan's trust account. McCullough submitted a bill to Northwest Bank for this payment on December 27, 2006, but did not receive the payment until January 22, 2007.

■ The Commonwealth's charges against McCullough are based upon the statutory language underlying the SOFI. The State Ethics Act, 65 Pa.C.S.A. § 1102, defines "Income" as "Any money or thing of value received or to be received as a claim on future services or in recognition of services rendered in the past...." Arguably, this language supports the Commonwealth's charges, as on December 27, 2006, the $44,000 was money to be received in recognition of services rendered in the past.

McCullough argues that this definition was not included in the instructions included with the SOFI, which defined income as "any payment, fee, salary, expense, allowance, forbearance, forgiveness, interest income, dividend, royalty, rental income, capital gain, reward, severance payment, prize winning, and tax exempt income." McCullough correctly notes that the phrase "to be received" is noticeably absent from this definition. Furthermore, McCullough cites a Commonwealth Court case that held that "a candidate may reasonably rely on the instructions given to him on what is reportable income" to defeat a ballot challenge. *In re Nominating Petition of Brady*, 923 A.2d 1206, 1210 (Pa.Cmwlth.2007). However, that same Court noted that

> [o]f course, outside the frenzy of the election process, the Ethics Commission should then investigate, take testimony and impose sanctions on the candidate based on whether the non-disclosure was serious or not, intentional or not, and

impose or seek appropriate sanction, including criminal ones.

*Id.*, at 1212 n. 10. As such, the Commonwealth Court's decision was explicitly confined to ballot challenges.

Our review of the record and McCullough's arguments lead us to conclude that the issue of the SOFI instructions is best styled as a defense to the charge that McCullough intentionally failed to disclose the income. The Commonwealth's charge sets out a *prima facie* case that McCullough intentionally failed to disclose the income, as he was allegedly covering up his other crimes. The fact that the instructions on the form itself define income in a way that contradicts the statute presents a factual dispute as to McCullough's intent, nothing more. As such, we do not find that the trial court abused its discretion in denying the motion to dismiss.

Order affirmed. Jurisdiction relinquished.