J-S53013-14

**ON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BRADLEY KOMPA, | |
| Appellee | No. 1912 WDA 2013 |

Appeal from the Order Entered November 1, 2013
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0000898-2013

BEFORE:  DONOHUE, OLSON and PLATT,* JJ.

DISSENTING MEMORANDUM BY OLSON, J.:    **FILED SEPTEMBER 19, 2014**

Because I believe that the Commonwealth established a *prima facie* case regarding a materially false statement made in connection with the purchase of a firearm, I respectfully dissent.

As set forth by the learned majority, in order to establish a *prima facie* case for trial, the Commonwealth has the following burden:

> [T]he Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.  When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.
>
> The *prima facie* case merely requires evidence of the existence of each element of the crime charged.  The weight and credibility of the evidence is not a factor at this stage.

* Retired Senior Judge assigned to the Superior Court.

***Commonwealth v. McCullough***, 86 A.3d 901, 905 (Pa. Super. 2014)

(citations, brackets, and original emphasis omitted).

The Commonwealth charged Kompa with making a materially false statement in connection with the purchase of a firearm, which is statutorily defined as:

> (4) Any person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm under this chapter, he knowingly and intentionally:
>
>           *    *    *
>
> (ii) makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]

18 Pa.C.S.A. § 6111(g)(4)(ii).

The Commonwealth charged Kompa after he purchased a firearm and answered "no" to the following question on the purchase form:  "Are you an unlawful user of, or addicted to marijuana or any depressant, stimulant, narcotic drug, or any other controlled substances?"  In concluding that a *prima facie* case was not established, the trial court determined:

> Notably, [Kompa] never stated that he was addicted to drugs at the time he purchased the firearm, which was corroborated by the statement of [the firearm dealer] that he would not have sold the firearm if [Kompa] had been under the influence.  Additionally, [Kompa] never stated that his answer was false.
>
> The Commonwealth failed to set forth a *prima facie* case that [Kompa] intentionally or knowingly made a false statement in connection with the purchase of a firearm. While the Commonwealth may benefit from the standard of review at that procedural juncture, the Commonwealth

offered no evidence that [Kompa] was addicted to drugs or an unlawful user of drugs at the time of the purchase.

Trial Court Opinion, 3/21/2014, at 5 (record citation omitted).

In affirming the trial court's determination, the learned majority states:

Kompa admitted he was a "near constant" user of drugs for many years, but also stated that he was not using drugs when he purchased the gun. "Near constant" is not the same as "constant;" it means that there were periods of time during which he was not using drugs. The man who sold Kompa the gun testified that he would not have done so if Kompa appeared to be under the influence. Thus, the Commonwealth has not put forth any evidence that Kompa was an addict or in a period of drug use at the time he bought the gun, nor that he was under the influence of a controlled substance when he filled out [the sales] form.

Majority Memorandum, at 5-6.

My review of the record reveals otherwise. At the preliminary hearing, the Commonwealth called the investigating officer, Officer Joseph Bielevicz, who testified as follows:

I told [Kompa] that I had reviewed his history, and it was clear to me that he was a drug user. And I asked him if he agreed with that. And he told me that he had used a variety of drugs since high school, starting with marijuana, moving on to cocaine and various types of pills, and he said that he had begun using heroin over a year ago, which at that time would have put that at January, 2011.

When I asked him if he was using heroin at the time that he bought the gun, he said that he thought he was clean at the time, but he seemed unsure.

He did agree that since high school he has been a near constant user of one type of controlled substance or another.

He also acknowledged that for over a year and a half[1] he had loaned his car out to various people in exchange for heroin.

N.T., 4/8/2013, at 11-12.

On cross-examination, the following exchange occurred:

[Defense counsel:]   [I]sn't it true that Mr. Kompa said that he thought he was clean at the time, and he didn't think that he had done anything wrong, correct?

[Officer Bielevicz:]   Yes.

[Defense counsel:]   At that time you didn't believe him, did you?

[Officer Bielevicz:]   Well, it wasn't a matter of believing. It was a matter of the definition of what a drug user and addicted to drugs was.

I mean he was questioning whether he had used [narcotics] recently, prior to the time of purchase.  But it doesn't negate the fact that he was addicted to drugs, which is what he told me.

*Id.* at 15-18.

The trial court and majority focus on the fact that Kompa believed that he was "clean" at the time of the purchase, thus indicating that he had not used narcotics recently.  Upon review, however, the Commonwealth presented evidence that Kompa was "unsure" if he was "clean at the time"

_____

[1]  Officer Bielevicz testified he interviewed Kompa on January 14, 2012. N.T., 4/8/2013, at 14.  Kompa purchased the firearm on July 26, 2010. *Id.* at 12. Thus, Kompa admitted to lending his car in exchange for heroin as early as July 14, 2010.

he purchased the firearm. He also acknowledged that he was a "near constant" user of controlled substances since high school. The majority tries to distinguish "near constant" use with "constant" use, but it is a distinction without a difference. The question on the form asked if Kompa was "**an unlawful user of**, or addicted to marijuana or any depressant, stimulant, narcotic drug, or **any** other **controlled substances**." Without even reaching whether Kompa was addicted to controlled substances, he admitted that he was a "near constant" user, but an unlawful user nonetheless. Furthermore, Kompa also admitted that, at the time of the gun purchase, he was lending his car to people in exchange for heroin. Thus, regardless of whether he thought he might have been clean at the precise moment that he completed the form and purchased the gun, Kompa's admitted pervasive drug use before and after the purchase of the firearm show his unlawful use of narcotics during the relevant period. Accordingly, when Kompa represented that he was not using or addicted to narcotics on the firearm form, the Commonwealth set forth a *prima facie* case that Kompa intentionally or knowingly made a false statement in connection with the purchase of a firearm.

Moreover, the trial court and majority erroneously buttress their position with stipulated evidence that the firearms dealer did not recall that Kompa was visibly intoxicated at the time of the purchase. Primarily, the parties stipulated that the owner of the firearm shop "would not have been able to identify Mr. Kompa as the person who actually purchased the

firearm." N.T., 10/25/2013, at 3. Instead, the parties stipulated that "had Mr. Kompa been under the influence of anything at that point, he would not have sold him the firearm." *Id.* at 4. A dearth of evidence of visible intoxication is not confirmation of the absence of regular narcotic use or the lack of an addiction to drugs. Certainly, one can be addicted to narcotics, or a habitual user of controlled substances, without showing outward signs of intoxication. Likewise, a drug user can have periods of lucidity or could feign sobriety. Thus, reliance on the fact that Kompa appeared sober to the clerk at the time of the firearm purchase was flawed.

Viewing the evidence in the light most favorable to the Commonwealth, I believe that the Commonwealth established a *prima facie* case against Kompa for making a materially false statement in connection with the purchase of a firearm. Knowing that he was a regular user of narcotics at the time he bought the firearm, Kompa averred that he was not. The Commonwealth set forth evidence of the existence of each element of the crime charged. The weight and credibility of the evidence is not a factor at this stage and should be decided at trial. Hence, I would reverse the trial court's grant of *habeas corpus* and remand for additional proceedings.

For all of the foregoing reasons, I respectfully note my dissent.