Commonwealth, Appellant, *v.* Rosenbloom
Finance Corp.

Argued May 21, 1973. Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George W. Keitel,* Deputy Attorney General, for Commonwealth, appellant.

*Frank A. Sinon,* with him *Sherill T. Moyer,* and *Rhoads, Sinon & Reader,* for appellee.

OPINION BY MR. JUSTICE MANDERINO, October 16, 1974:

The issue in this appeal is whether the appellee, Rosenbloom Finance Corporation, may elect to be taxed as a holding company and thus pay less Pennsylvania corporate franchise tax. The Board of Finance and Review resettled appellee's reported franchise tax for the year 1963. The resulting tax was $25,972.03. In an appeal to the Court of Common Pleas of Dauphin County sitting as the Commonwealth Court, appellee raised two issues: (1) whether the valuation of appellee's capital stock was proper, and (2) whether the appellee was a holding company and thus entitled to a reduced tax rate.

The first issue was decided in favor of the Commonwealth and is not raised in this appeal. The second issue was also initially decided in favor of the Commonwealth. The appellee, however, filed exceptions which were sustained. The exceptions were sustained because the Commonwealth Court held that our decision in *Commonwealth v. Alcoa Properties, Inc.,* 440 Pa. 42, 269 A.2d 748 (1970), decided after appellee filed its exceptions, mandated a conclusion that the appellee was a holding company. The Commonwealth Court thus ordered that the Commonwealth establish a credit in favor of the appellee in the amount of $25,666.83. From that order the Commonwealth has appealed.

Under the corporate franchise tax law, a corporation may elect to be taxed as a holding company, and thus pay a lower tax rate, if the electing corporation meets two criteria of the statutory definition of holding company which is as follows: "The term 'holding company' shall mean any corporation (i) at least ninety percent of the gross income of which for the taxable year is derived from dividends, interest, gains from the sale or other disposition of stock or securities and the rendition of management and administrative services to subsidiary corporations, and (ii) at least sixty percent of the actual value of the total assets of which consist of stock, securities or indebtedness of subsidiary corporations." Act of June 1, 1889, P. L. 420, *as amended,* 72 P.S. §1871(e) (replaced by Act of March 4, 1971, P. L. 6, No. 2, art. VI, §602, *as amended,* 72 P.S. §7602(f)).

In this case we are involved with part (ii) of the definition. The issue is whether, in part (ii), the phrase "of subsidiary corporations" modifies the immediately preceding phrase "of stock, securities, or indebtedness" or whether it modifies only the immediately preceding word "indebtedness." If the phrase "of subsidiary corporations" modifies the phrase "of stock, securities or indebtedness," a corporation's assets consisting "of stock, securities" in *non-subsidiary* corporations should not be considered in determining the necessary sixty percent requirement of part (ii). If, however, the phrase "of subsidiary corporations" modifies only the word "indebtedness" a corporation's assets consisting "of stock, securities" of *any corporation*— not necessarily a *subsidiary corporation*—should be considered. In this case, sixty percent of the actual value of appellee's total assets does not consist "of stock, securities" of a *subsidiary corporation* but does consist "of stock, securities" of *non-subsidiary* corporations.

Appellee argues that our decision in *Alcoa Properties* controls the issue now before us. We do not agree. This case and *Alcoa Properties* both concern the statutory definition of holding company, but not the same part of that definition. In *Alcoa Properties,* we were concerned with part (i) of the definition. We concluded that the phrase "to subsidiary corporations" in part (i) modified only the phrase "the rendition of management and administrative services," and not the phrase "from dividends, interest, gains from the sale or other disposition of stock or securities." We reached that conclusion because any other result would have distorted the "clear language of the Act." This case involves not part (i) but part (ii) of the definition. In *Alcoa Properties,* part (ii) of the definition was not an issue because the parties agreed that "over 60% of the actual value of Alcoa's total assets [consisted] of the *stock* of three *subsidiary corporations.*" 440 Pa. at 44, 269 A.2d at 749 (emphasis added).

Appellee argues that it satisfies the criterion of part (ii) because sixty percent of the total value of its assets consists of stock and securities, even though the stock and securities are not those of subsidiary corporations. Appellee would have us read part (ii) as though the following italicized words had been inserted into the definition: "At least sixty percent of the actual value of the total assets of which consists of stock *of any corporations,* securities *of any corporations* or indebtedness of subsidiary corporations." We cannot accept the appellee's meaning of part (ii). We do not find any ambiguity in the language "of stock, securities or indebtedness of subsidiary corporations." Without any strain on the rules of grammar or any deviation from common and approved usage, the language of part (ii) means that the "stock" and "securities" mentioned as well as the "indebtedness" mentioned, must be "of subsidiary corporations." *See Statutory Con-*

*struction Act,* 1 Pa. S. §1903. The phrase "of subsidiary corporations" modifies "of stock, securities or indebtedness."

The appellee argues that we should utilize the rule of the last antecedent, a grammatical rule which is sometimes an aid in construing legislation. According to the appellee, the rule requires that the phrase "of subsidiary corporations" modify only the word "indebtedness." Sutherland's Statutory Construction gives the following explanation of the last antecedent rule: "Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is but another aid to discovery of intent or meaning, however, and not an inflexible and uniformly binding rule. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent." C. Sands, 2A Sutherland's Statutory Construction §47.33 (4th ed. 1973). The last antecedent rule may sometimes be helpful but it is not applicable to all cases. "When several words are followed by a [modifying phrase] which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the [modifying phrase] be read as applicable to all." *Porto Rico Railway, Light & Power Co. v. Mor,* 253 U.S. 345, 348, 64 L.Ed 944, 946, 40 S. Ct. 516, 518 (1920); *see United States v. Bass,* 404 U.S. 336, 30 L.Ed.2d 488, 92 S. Ct. 515 (1971); *Buscaglia v. Bowie,* 139 F.2d 294 (1st Cir. 1943); *Morris v. Glen Alden Coal Co.,* 136 Pa. Superior Ct. 132, 7 A.2d 126 (1939); 50 Am. Jur. *Statutes* §269 (1944). In the statute in this case

we have a phrase containing several words "stocks," "securities" and "indebtedness," which are followed by the modifying phrase "of subsidiary corporations." The modifying phrase "of subsidiary corporations" is "applicable as much" to the words "stocks" and "securities" as it is to the word "indebtedness." The natural construction of part (ii), therefore, requires that the modifying phrase be read as applicable to all the words in the preceding phrase.

Appellee has also called our attention to a legislative revision of part (ii) of the statutory definition of holding company which was proposed in the General Assembly in 1967. That revision would have changed part (ii) to read "at least sixty percent of the average actual value of the total assets of which consist of investments in subsidiary corporations in the form of stock, securities or indebtedness." The bill proposing the revision was never reported out of committee. The failure of the legislative committee to report on the proposed revision does not indicate that the appellee's interpretation of the existing definition is correct. The proposed revision was not to change the law but was to "further clarify and define holding companies." Since the purpose was to serve as a clarification of the existing language, we cannot infer any intent to change the existing meaning of the law. The legislative committee may have concluded that there was no need to clarify part (ii) of the definition.

We have considered other grammatical arguments raising issues of punctuation and grammar, but we have found none of these persuasive. Since at least sixty percent of the total value of appellee's assets does not consist "of stock, securities or indebtedness of subsidiary corporations," it is not a holding company and thus does not qualify for a lower tax rate.

Judgment vacated and matter remanded to the Commonwealth Court for the entry of an appropriate judgment consistent with this opinion.