983 A.2d 708

Edward G. RENDELL, Governor of Pennsylvania, and John
Quigley, Acting Pennsylvania Secretary of Conservation
and Natural Resources, Appellees

v.

PENNSYLVANIA STATE ETHICS COMMISSION, Appellant

Edward G. Rendell, Governor of Pennsylvania, and
John Hanger, Acting Pennsylvania Secretary
of Environmental Protection, Appellees

v.

Pennsylvania State Ethics Commission, Appellant.

Supreme Court of Pennsylvania.

Argued May 12, 2009.

Decided Nov. 30, 2009.

294

Robin M. Hittie, Esq., PA State Ethics Commission, for Pennsylvania State Ethics Commission (82 MAP 2008, 83 MAP 2008).

Bruce Philip Merenstein, Esq., Ralph G. Wellington, Esq., Arlin M. Adams, Esq., Schnader Harrison Segal & Lewis, L.L.P., Philadelphia; Gregory Eugene Dunlap, Esq., PA Governor's Office of General Counsel, Harrisburg, for Governor Rendell, John Quigley (82 MAP 2008).

Bruce Philip Merenstein, Esq., Ralph G. Wellington, Esq., Arlin M. Adams, Esq., Schnader Harrison Segal & Lewis, L.L.P., Philadelphia; Gregory Eugene Dunlap, Esq., PA Governor's Office of General Counsel, Harrisburg, for Governor Rendell, John Hanger (83 MAP 2008).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice SAYLOR.

This appeal concerns the issue of whether a non-profit corporation is a "business" as the term is defined in Pennsylvania's Public Official and Employee Ethics Act.[1]

The Ethics Act, among other things, prohibits public officials from engaging in conduct that constitutes a conflict of interest. *See* 65 Pa.C.S. § 1103(a). Such a conflict arises when a public official or public employee uses the authority of his or her office for the private pecuniary benefit of himself, a family member, or a "business with which he or a member of his immediate family is associated." 65 Pa.C.S. § 1102. The act defines "business" as:

---

1. Act of October 15, 1998, P.L. 729, No. 93, § 1 (as amended, 65 Pa.C.S. §§ 1101–1113) (the "Ethics Act").

Any corporation, partnership, sole proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, holding company, joint stock company, receivership, trust or any legal entity organized for profit.

65 Pa.C.S. § 1102.

In April 2007, Pennsylvania's General Counsel requested an advisory opinion or advice of counsel from the Pennsylvania State Ethics Commission, inquiring whether, under Section 1103(a) of the Ethics Act, the then-Secretary of the Department of Environmental Protection ("DEP") and Secretary of the Department of Conservation and Natural Resources ("DCNR") were required to recuse themselves from their respective departments' grant-making process due to potential conflicts of interest.[2] In DCNR's case, the Secretary's wife was employed by the Pennsylvania Horticultural Society, a non-profit organization that has received grant funding from the DCNR. In DEP's case, the Secretary's husband performed consulting work on projects receiving grants from the DEP. In both instances, the Governor's office believed that recusal was unnecessary, but sought an additional opinion or advice of counsel from the Commission. *See* 65 Pa.C.S. § 1107(10), (11) (authorizing the Commission to provide advice and opinions on such matters).

In advisory opinions, the Commission concluded that both Secretaries would be in violation of the Ethics Act's conflict provision if they participated in their agencies' grant-making processes involving such entities. It recommended that, to avoid such a conflict, the Governor should appoint someone outside each Secretary's chain of command to take his or her place in that process. *See In re DiBerardinis,* Case No. 07–010 (Pa. Ethics Comm'n Apr. 30, 2007); *In re McGinty,* Case No. 07–009 (Pa. Ethics Comm'n Apr. 30, 2007).

**2.** Both Secretaries have since left their positions, and new appointments have occurred. By operation of Rule of Appellate Procedure 502(c), however, the appeal has not abated and the successors have been substituted as parties. *See* Pa.R.A.P. 502(c). For ease of discussion, the term "Appellees" will generally refer to the Governor and the former Secretaries.

Both Secretaries, together with the Governor (collectively, "Appellees"), filed petitions for review addressed to both the Commonwealth Court's appellate jurisdiction and to its original jurisdiction. The appellate-jurisdiction petitions sought review of the advisory opinions, alleging that the Commission had committed errors of law and that the opinions would disrupt the effective administration of state government. The original-jurisdiction petitions requested declaratory relief regarding a number of issues raised in the opinions. The Commission filed a motion to quash the appeals and preliminary objections. The petitions were then consolidated for disposition.

Initially, on December 19, 2007, the unanimous *en banc* Commonwealth Court, *see Rendell v. State Ethics Comm'n*, 938 A.2d 554 (Pa.Cmwlth.2007), granted the Commission's motion to quash the appeal, granted the Commission's preliminary objections in part and denied them in part, and permitted the declaratory judgment action to go forward on two substantive questions, namely: (1) whether non-profit organizations are included in the definition of businesses under Section 1102 of the Ethics Act; and (2) whether, when a departmental head has a conflict of interest, the Governor must appoint someone outside the department head's chain of command to avoid the conflict. In response, Appellees and the Commission filed cross-motions for summary relief as to these issues.[3]

On October 3, 2008, the *en banc* Commonwealth Court issued a published opinion and order, *see Rendell v. State Ethics Comm'n*, 961 A.2d 209 (Pa.Cmwlth.2008), concluding that the term "business," as defined in the Ethics Act, excludes non-profit entities. In reaching this conclusion, the court relied upon *In re Nomination Pet. of Carroll*, 586 Pa.

3. In granting the Commission's motion to quash, the Commonwealth Court concluded that the advisory opinions were not appealable orders under Section 702 of the Administrative Agency Law. *See* 2 Pa.C.S. § 702. This Court allowed appeal from that determination, *see Rendell v. State Ethics Comm'n*, 598 Pa. 557, 958 A.2d 1044 (2008) (*per curiam*), and consolidated the matter with the present direct appeal. The appeal by allowance was later discontinued, however, leaving for disposition only the issues from the declaratory judgment action that survived preliminary objections, as recited above.

624, 896 A.2d 566 (2006), where this Court suggested that, in the context of required financial disclosures for election matters, a non-profit organization is not a business as defined by the Ethics Act.[4] In this respect, the court rejected the Commission's contention that *Carroll* was not controlling because it did not definitively hold that non-profits are not businesses under the Ethics Act. Although the Commonwealth Court agreed with the Commission that different policies underlie the Act's requirements in connection with candidates' financial interest statements and with the avoidance of conflicts by public officials, it noted that the term "business" is specifically defined in the Act and indicated that it was not free to disregard this Court's interpretation of that term as excluding non-profits. Thus, in view of precedent, the court granted summary relief to Appellees and denied it to the Commission, declaring that the Secretaries would not be under a conflict of interest. *See Rendell,* 961 A.2d at 216. In light of its disposition, the court declined to reach the second substantive issue—whether the act requires the Governor to appoint someone outside the department head's chain of command in the event of a conflict. *See id.* at 216 n. 9.

Judge Cohn Jubelirer, joined by Judge Leavitt, filed a dissenting opinion, expressing that *Carroll* had declared "business" to be ambiguous on the issue of whether it included non-profits. The dissent stated that, in election matters, the Act must be read *in pari materia* with the Election Code, which tempers the definition of "business" to protect voter choice. Here, however, the salient rule of construction is that the Act, as remedial legislation, should be liberally construed to accomplish its goal of avoiding the appearance of impropriety. The dissent pointed out that employees and contractors of non-profit corporations may receive substantial pecuniary gain occasioned by a governmental grant, thus rendering the non-profit versus for-profit status of a corporation immaterial within the framework of the present issue. The dissent would

4. Cf. *Pilchesky v. Cordaro,* 592 Pa. 15, 922 A.2d 877 (2007) (*per curiam* ) (holding that a candidate's failure to disclose, in his statement of financial interests, his position as a director of a for-profit business entity constituted a fatal defect warranting his removal from the ballot).

thus have denied declaratory relief to Appellees on the question of the scope of the Act's definition of business. However, the dissent would have granted them relief on the issue of whether the Governor must appoint someone outside of the Secretary's chain of command to perform the grant-making function. In this latter respect, the dissent opined that the Secretary's personal recusal would be sufficient to avoid the conflict of interest, particularly as the Act does not impute a conflict based on a person's being in a chain of command. *See id.* at 217–19 (Cohn Jubelirer, J., dissenting).

The Commission filed a notice of appeal from the Commonwealth Court's order, limited to the issue of whether the court correctly interpreted "business" to exclude non-profit entities, and probable jurisdiction was noted.

Presently, the Commission argues that, as remedial legislation designed to promote public trust in government, the Ethics Act should be liberally construed. *See Maunus v. State Ethics Comm'n,* 518 Pa. 592, 598–600, 544 A.2d 1324, 1327–28 (1988). More specifically, the Commission emphasizes that the General Assembly expressly declared in Section 1101.1(a) of the enactment that its purpose is to assure the citizens of Pennsylvania that the financial interests of their representatives and public servants will not conflict with their duties to the Commonwealth.[5] *See* Brief for Commission at

5. That provision states:
 (a) **Declarations.**—The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this chapter shall be liberally construed to promote complete financial disclosure as specified in this chapter. Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this chapter intends to define as clearly as possible those areas which represent conflict with the public trust.
 65 Pa.C.S § 1101.1(a).

26. The Commission also argues that, on its face, Section 1102's definition of business expressly includes any corporation and any organization, without qualification. It submits that, in the final phrase of the definition ("or any legal entity organized for profit"), the "or" is disjunctive, and the independent use of the word "any" in this clause precludes an interpretation that would apply the "for profit" qualification to corporations and organizations. Further, the Commission avers that the qualifier "organized for profit" does not apply to "corporation" or "organization," because it does not extend to all of the other preceding entities listed in the definition. As an example, the Commission observes that receiverships are not organized for profit.

The Commission's argument with regard to *Carroll* is twofold. First, it contends that the Court in *Carroll* had been erroneously misinformed that the Commission had no rulings as to whether non-profit entities were considered businesses under the act. Citing several of its previous rulings, the Commission submits that it has consistently interpreted the term "business" as it is defined in Section 1102 to include non-profit corporations and organizations. *See* Brief for Commission at 29–30. Alternatively, the Commission attempts to distinguish the holding in *Carroll* by arguing that

the *Carroll* decision did not definitively decide the status of non-profits under the Ethics Act, particularly with respect to situations involving financial interests or relationships. Rather, this Court simply decided that any ambiguity in the definition of "business" should be construed most favorably to candidates seeking ballot access, and that it would not be a fatal defect to a candidate's nomination petition for the candidate to fail to disclose on his Statement of Financial Interests his involvement with a non-profit corporation from which he receives no compensation and that has nothing to do with his financial interests.

*Id.* at 34 (emphasis is removed). The Commission avers that this factual distinction renders *Carroll* inapposite to the instant matter. As such, the Commission maintains that *Carroll* should be distinguished as only applying to election cases

involving a candidate's failure to disclose non-financial associations on a Statement of Financial Interests filed with nomination petitions.

In response, Appellees urge this Court to abide by its prior interpretation of the scope of the Ethics Act. In this regard, Appellees rely heavily on *Carroll*, which they view as holding definitively that Section 1102 excludes non-profit organizations from the statutory definition of "business." In addition to their more general *stare decisis* argument, Appellees contend that the plain language of the Ethics Act supports the conclusion that non-profit entities are not covered by the statute. Appellees argue that, when several words are followed by a modifying phrase, the natural construction of the language demands that the modifying phrase be read as applicable to all. *See* Brief for Appellees at 10 (citing *Commonwealth v. Rosenbloom Fin. Corp.*, 457 Pa. 496, 500, 325 A.2d 907, 909 (1974)). Further, Appellees aver that there could be no legislative purpose in excluding only a single nebulous category of non-profit businesses, i.e. non-profit "legal entities," while including within the act all other non-profit corporations. *See id.* at 13.

The issue for resolution is one of statutory interpretation; it is therefore a question of law subject to plenary review by this Court, in which our standard of review is *de novo*. *See Gardner v. WCAB (Genesis Health Ventures)*, 585 Pa. 366, 372 n. 4, 888 A.2d 758, 761 n. 4 (2005).

In *Carroll*, this Court credited the candidate's argument that the Ethics Act, at its core, is designed to expose possible financial conflicts and, thereby, strengthen the citizens' faith and confidence in their government by assuring the impartiality of public officials. *See Carroll*, 586 Pa. at 631, 896 A.2d at 570. Accordingly, in determining whether the candidate's failure to disclose his unpaid directorship positions on the boards of two non-profit organizations constituted a fatal defect to his financial disclosure statement, the Court focused its attention most closely on the fact that no pecuniary or other material gain flowed from the candidate's positions with

the organizations in question. In a footnote, the Court recognized that there were two possible interpretations of the term "business" as set forth in the act's definitional provision and stated generally that, to the extent the definitional language is ambiguous, it should be construed favorably to the candidate seeking office. *See id.* at 638 n. 10, 896 A.2d at 574 n. 10. However, the Court highlighted that the "distinct question" it was called upon to decide pertained to "whether and when a failure to disclose **non-financial** associations on a Statement of Financial Interests should trigger operation of the fatal defect rule." *Id.* at 637, 896 A.2d at 573 (emphasis in original). In the subsequent dispositional section of the decision, moreover, *Carroll* repeatedly stressed that the crux of the issue concerned the candidate's financial interests—his compensation, or lack thereof—in connection with the entity in question; the Court rarely, if ever, returned to the significance of the organizations' non-profit status in the context of the case. Thus, a close reading of *Carroll* reveals that the language pertaining to the scope of the term "business" was ancillary and, ultimately, unnecessary to the resolution of the controversy. As such, it constituted *dicta* and left open the question, for our present inquiry, whether the term "business" includes non-profit corporations. *See Barnes v. Alexander,* 232 U.S. 117, 120, 34 S.Ct. 276, 277, 58 L.Ed. 530 (1914) (observing that certain remarks in a prior opinion "were not necessary to the decision . . . so that at least we are warranted in treating the question as at large"); *see also S.E.C. v. Edwards,* 540 U.S. 389, 396, 124 S.Ct. 892, 898, 157 L.Ed.2d 813 (2004); *Commonwealth v. Singley,* 582 Pa. 5, 15, 868 A.2d 403, 409 (2005) (citing *Hunsberger v. Bender,* 407 Pa. 185, 188, 180 A.2d 4, 6 (1962) (finding that a statement in prior opinion, which clearly was not decisional but merely *dicta,* "is not binding upon us")). *See generally Storch v. Borough of Landsdowne,* 239 Pa. 306, 308, 86 A. 861, 861 (1913) ("Courts only adjudicate issues directly raised by the facts in a case or necessary to a solution of the legal problems involved."); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821) (Marshall, C.J.) (explaining why *dicta* is not binding in subsequent cases).

We recognize that, in our subsequent *per curiam* Order in *Pilchesky*, this Court stated, in a summary fashion, that *Carroll* stood for the position that a non-profit organization does not constitute a business entity under the Ethics Act. *See Pilchesky*, 592 Pa. at 16 n. 1, 922 A.2d at 877 n. 1. The critical circumstance brought forward in that case, however, was that the individual seeking ballot access had failed to disclose his holdings in a financial institution organized for profit. Thus, any question of whether the Ethics Act's definition of "business" includes non-profits was necessarily non-dispositional. Moreover, *Pilchesky's* characterization of *Carroll* does not reflect an in-depth analysis of the reasoning employed by that decision. Finally, it is worth noting that this Court did not have the benefit of the Commission's advocacy in either *Carroll* or *Pilchesky* and, thus, proceeded without guidance from the administrative agency charged with overseeing the implementation of the statute in question.[6]

 We agree with the suggestion from *Carroll* that the term "business" as contained in Section 1102 of the Ethics Act can reasonably be construed to either include or exclude non-profit entities. *See Carroll*, 586 Pa. at 638 n. 10, 896 A.2d at 574 n. 10. It is therefore ambiguous. *See generally Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 652–53, 976 A.2d 474, 483 (2009) (recognizing that an ambiguity exists when there are at least two reasonable interpretations of the text under review). Because of this ambiguity, we must reference principles of statutory construction to discern the legislative intent. *See O'Rourke v. Commonwealth*, 566 Pa. 161, 172, 778 A.2d 1194, 1201 (2001); *see also* 1 Pa.C.S. § 1921(a) (providing that the object of all statutory construction is to ascertain and effectuate the intent of the General Assembly). In undertaking our analysis,

we should not interpret statutory words in isolation, but must read them with reference to the context in which they

6. Notably, a similar situation was presented in *Sackett v. Nationwide Mut. Ins. Co.*, 596 Pa. 11, 940 A.2d 329 (2007), wherein this Court granted reargument to consider the position of the Insurance Department.

appear. We may also consider other factors, such as: the mischief to be remedied; the object to be attained; and the consequences of a particular interpretation.

*O'Rourke,* 566 Pa. at 173, 778 A.2d at 1201 (citing *Consulting Eng'rs Council of Pa. v. State Architects Licensure Bd.,* 522 Pa. 204, 208, 560 A.2d 1375, 1377 (1989), and 1 Pa.C.S. §§ 1921(c)(3), (4), (6)).

Certainly, *Carroll's* approach to Section 1102 of the Act was shaped in light of the harsh consequence that would result from an alternative interpretation, specifically, removal of a candidate from the ballot. Here, however, no such concern exists, and there are several equally compelling reasons to support the interpretation advocated by the Commission. For one, when interpreting the "organized for profit" qualifier in context, it is notable that the limitation appears at the end of the definition, and thus, under the last-antecedent principle of statutory construction as applied in other cases, *see, e.g., McKinley v. PennDOT,* 564 Pa. 565, 577 n. 10, 769 A.2d 1153, 1160 n. 10 (2001), it only to applies to the final item, "any legal entity." *See generally Payless Shoesource Inc. v. Travelers Companies, Inc.,* 569 F.Supp.2d 1189, 1197 (D.Kan.2008) (suggesting that the last antecedent rule may be applied where the court finds the language to be ambiguous).[7] As such, the interpretation urged by Appellees would be problematic be-

---

7. We are aware that the last-antecedent rule "is not absolute, but the United States Supreme Court has noted that it is 'quite sensible as a matter of grammar,' and the approach generally may be applied in absence of evidence of some contrary purpose." *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC,* 596 Pa. 638, 651, 948 A.2d 752, 760 (2008) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 381, 157 L.Ed.2d 333 (2003)). Appellees argue against application of this rule by observing that this Court recently interpreted the phrase, "stock, securities or indebtedness of subsidiary corporations" to refer to the stock and securities of subsidiary corporations, as well as to their indebtedness. *See Rosenbloom,* 457 Pa. at 498, 325 A.2d at 908, *cited in* Brief for Appellees at 11. That situation is entirely different, as the list items (stock, securities, and indebtedness) were all aspects of the corporations in view, as revealed by the preposition, "of." In the list here, each element is a self-contained item with the last one followed by limiting language. The interpretive question is whether such limitation applies to the last item only or to all the others. Accordingly, there is no legitimate comparison between *Rosenbloom* and the present case.

cause it would apply the "organized for profit" qualifier to receiverships; such receiverships are not by nature organized for profit—although theoretically they may generate a profit, at least in a generic sense (as Appellees point out)—but rather, for the protection of an entity's assets and the ultimate distribution of those assets to creditors. *See Commonwealth ex rel. Corbett v. Griffin,* 596 Pa. 549, 559, 946 A.2d 668, 674 (2008) (rejecting the position that an end-of-list qualifier applied to all items in the list, because its application to one of the list's items would be improbable).

■ In addition, this construction aligns with the Ethics Act's status as remedial legislation designed to promote public trust in government, particularly with regard to the financial dealings of public officials. *See In re Benninghoff,* 578 Pa. 402, 409, 852 A.2d 1182, 1186 (2004) ("The obvious purpose of the Ethics Act is to mandate disclosure of the financial dealings of public officials."); *Carroll,* 586 Pa. at 637, 896 A.2d at 573 ("The intent and purpose of the Ethics Act is not shrouded in mystery."); *see also* 1 Pa.C.S. § 1922(5) (providing that the General Assembly is presumed to intend to favor the public interest as against any private interest). In light of such a clear objective, it seems reasonable that a liberal interpretation of the term "business" is necessary to assure our citizens that the private financial interests of their public officials will not undermine the honest discharge of those officials' public duties. *See* 1 Pa.C.S. § 1928(c); *Maunus,* 518 Pa. at 598–600, 544 A.2d at 1327–28 (reasoning that the purpose of the Ethics Act is to ensure the "integrity and honesty of employees of this Commonwealth"). For example, as the Commonwealth Court dissent developed:

> It is inconsistent to allow one public official who earns $90,000 from a corporation as its employee or officer to conduct the Commonwealth's business with that corporation while a different public official earning a similar salary may not conduct Commonwealth business with a different corporation merely because one corporation is non-profit and the other is for-profit.

*Rendell*, 961 A.2d at 218 (Cohn Jubelirer, J., dissenting). Thus, regardless of whether the corporation receiving public funds is organized as a non-profit organization or a for-profit business, the appearance of impropriety would exist where a public official or his family member could realize a pecuniary gain from grants to such an entity if those grants stemmed from the public official's "use[of] the authority of his [or her] office." 65 Pa.C.S. § 1102.

■ As a final matter, this interpretation is consistent with the Commission's understanding of Section 1102, which, under the prevailing Pennsylvania law, is entitled to deference. *See generally Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 635, 752 A.2d 878, 881 (2000) (explaining that, when construing statutory language, courts are to afford substantial deference to the interpretation rendered by the agency charged with its administration).[8]

■ Accordingly, when we consider the "organized for profit" limitation in context of the definitional language as a whole and in light of the legislative objectives of the statute pertaining to the avoidance of impropriety or the appearance of impropriety, we ultimately conclude that the term "business," as defined by Section 1102 of the Ethics Act, should be interpreted to include non-profit entities.

■ In concurrence, Madame Justice Greenspan appears to agree with our decision on its merits, but, although the parties do not raise prudential considerations, she would invoke such concerns *sua sponte* and deny review. The first set of these is couched, in the concurring opinion, under the general rubric of

8. Although this Court recently suggested that less deference may be accorded to an administrative agency's argument adopted for the first time in pending litigation, *see generally Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 600 Pa. 207, 228, 964 A.2d 855, 868 (2009), the Commission emphasizes that it has applied its presently-advocated interpretation in adjudications that pre-dated the present litigation. *See In re Soltis–Sparano*, Case No. 94–054–C2 (Pa. Ethics Comm'n Feb. 20, 1997), at 31 ("The clear and unambiguous statutory language is that *any* corporation, including a non-profit corporation, is a 'business.' "), *reproduced in* Brief for Commission at Exh. G.

"case or controversy" and "justiciability." *See* Concurring and Dissenting Opinion, *op.* at 312 & n. 2, 983 A.2d at 720 & n. 2.[9]

■ Several discrete doctrines—including standing, ripeness, and mootness-have evolved to give body to the general notions of case or controversy and justiciability. *Cf. Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (identifying standing, ripeness, mootness, and political question, as "doctrines that cluster about [the] Article III" case or controversy requirement (citation omitted)).[10] Under prevailing Pennsylvania law, however, the matter of standing is not available to be raised by a court *sua sponte*. *See In re Nomination Petition of deYoung*, 588 Pa. 194, 201, 903 A.2d 1164, 1168 (2006) ("This Court has consistently held that a court is prohibited from raising the issue of standing *sua sponte*.").

Here, other than the matter of asserted mootness, the bulk of the concerns raised in the concurrence—including the allusions to advisory opinions and hypothetical versus concrete impact—fall within the umbrella of the standing doctrine as it is understood in Pennsylvania. *See, e.g., Pittsburgh Palisades Park, LLC, v. Commonwealth*, 585 Pa. 196, 203, 888 A.2d 655,

9. In advancing her position that prudential considerations bar our review, Justice Greenspan relies on a number of decisions concerning the courts' subject matter jurisdiction. *See, e.g.,* Concurring Opinion, *op.* at 312 n. 2, 983 A.2d at 720 n. 2 (citing, *inter alia, Pennsylvania R.R. Co. v. PUC*, 396 Pa. 34, 38, 152 A.2d 422, 424 (1959) ("No emergency, real or feared, and no alleged hardship to a complaining party, however, great, can justify a court's entertaining and passing upon a subject matter which is not within its jurisdictional competence.")). There is no reasonable claim in this case, however, that the Commonwealth Court or this Court lacks subject matter jurisdiction to engage in the straightforward exercise of statutory construction necessary to resolve the present intergovernmental dispute. Indeed, the concurrence otherwise appears to implicitly acknowledge that its focus is on prudential matters, particularly in its development of the distinction between the jurisdictional aspects of the federal case-or-controversy requirement and the prudential application of similar principles in Pennsylvania. *See* Concurring Opinion, *op.* at 311 n. 1, 983 A.2d at 720 n. 1. Thus, the line of decisions concerning subject matter jurisdiction, as referenced in the concurrence, lacks relevance.

10. Pennsylvania courts have frequently found the extensive body of federal decisions helpful in addressing standing and other prudential considerations. *See, e.g., Fumo v. City of Philadelphia*, 601 Pa. 322, 343–44, 972 A.2d 487, 500 (2009).

659 (2005) ("The courts in our Commonwealth do not render decisions in the abstract or offer purely advisory opinions; consistent therewith, the requirement of standing arises from the principle that judicial intervention is appropriate only when the underlying controversy is real and concrete[.]" (internal quotation marks and modifications omitted)). Thus, under this Court's case-or-controversy jurisprudence as it stands, these concerns simply are not available for consideration at this time, since they have not been raised by any of the parties.[11]

The second strand of case-or-controversy jurisprudence, ripeness, overlaps substantially with standing. *See generally Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 –1245 (11th Cir.1998) ("In cases involving pre-enforcement challenges such as this one, we have previously noted that the lines among the justiciability doctrines tend to blur.").[12] Our approach would be peculiar indeed if we were to maintain that the components of the standing doctrine discussed above (including advisory-opinion and hypothetical-versus-concrete aspects) are unavailable for *sua sponte* consideration by the courts, yet nonetheless may be considered *sua sponte* by simply restyling them as ripeness (or, more generally, case-or-controversy or justiciability) concerns.[13]

**11.** Parenthetically, in terms of the substantive standing analysis advanced in the concurrence, although the opinion discusses the viability of a pre-enforcement challenge to the application of statutory regulatory provisions, it does not address the line of decisions recognizing the availability of a pre-enforcement challenge in the regulatory context. *See, e.g., Arsenal Coal Co. v. Commonwealth*, 505 Pa. 198, 209–10, 477 A.2d 1333, 1339–40 (1984) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

**12.** Commenting on the doctrinal overlap between standing and ripeness analysis, one court has observed: "Few courts draw meaningful distinctions between the two doctrines; hence, this aspect of justiciability is one of the most confused areas of the law." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir.2006) (quoting *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 389–90 (11th Cir.1996)).

**13.** The remaining aspect of the ripeness doctrine concerns the degree to which the peculiar facts are relevant to resolution of the dispute. *See, e.g., LeClerc v. Webb*, 419 F.3d 405, 413–414 (5th Cir.2005) (observing that a pre-enforcement action "is generally ripe if any remaining questions are purely legal ... [and] further factual development" is not

Contrary to Justice Greenspan's perspective, we do not "implicitly overrule the long line of Pennsylvania Supreme Court decisions that have denied parties relief in the form of advisory opinions under the Declaratory Judgment Act." Concurring Opinion, *op.* at 316 n. 8, 983 A.2d at 723 n. 8. Rather, we merely decide the discrete legal issue presented to us by the parties in this appeal and abide by the existing limitations on *sua sponte* judicial review.

■■■ Justice Greenspan also raises the issue of mootness, although it also has not been raised by the parties. *See* Concurring Opinion, *op.* at 317, 983 A.2d at 722. We recognize that this Court has in the past considered such concerns of its own accord. *See, e.g., In re Estate of Baeher,* 533 Pa. 70, 618 A.2d 944 (1993) *(per curiam ).* The Court has never indicated, however, that it is obliged to search outside the record to invoke the mootness doctrine *sua sponte,* and we decline to do so here.

In this case, we have before us a narrow, focused, purely legal issue in sharp controversy between Appellees, including the Chief Executive Officer of Pennsylvania, and the independent administrative agency charged with enforcement responsibility relative to ethical obligations of government officials. *Cf. In re Gross,* 476 Pa. 203, 210–11, 382 A.2d 116, 120 (1978) (expressing the Court's special reluctance to consider moot questions which raise constitutional issues). The Governor has asserted that the scope of the issue extends well beyond the immediately affected parties. The question presented has been fully developed in the Commonwealth Court, culminating in a published opinion which all Justices agree warrants correction, and in this Court via able advocacy. The extra-record factual circumstances raised by Justice Greenspan have no impact on the salient legal analysis, or on the Governor's more abstract claim of standing, to which any challenge has been waived. The subject is an important provision of the Ethics Act, which emphasizes maintenance of the public trust

required for effective judicial review). It is difficult to envision a more focused legal inquiry than responding to Appellees' directed effort to obtain a definitive answer to the question whether the term "business," as used in the Ethics Code, encompasses a particular type of entity.

and the need for clear guidelines to direct public officials and employees in their actions. *See* 65 Pa.C.S. § 1101.1(a) ("[T]he General Assembly by this chapter intends to define as clearly as possible those areas which represent conflict with the public trust.").

Despite the Legislature's manifest intent for clarity, we have determined (and Justice Greenspan apparently agrees) that the provision of the Ethics Act under review is materially ambiguous. The procedure advocated by Justice Greenspan for achieving clarity through the courts (which are charged with the interpretation of legislative enactments) entails requiring public officials to expose themselves to ethical investigation and possible civil fines, criminal penalties, *see* 65 Pa. C.S. § 1109(a), and removal from office or termination from employment, 4 Pa.Code § 7.173, in order to secure meaningful review.

In such circumstances, we decline to reach outside the record to assess the degree to which the ongoing controversy arising out of the clear and well developed differences between the Governor of Pennsylvania and the State Ethics Commission is presently acute. Indeed, were we to do so, it appears the litigants might lay good claim to the availability of the great-public-importance or capable-of-repetition-yet-evading-review exceptions to the mootness doctrine. *See Pap's A.M. v. City of Erie,* 571 Pa. 375, 391, 812 A.2d 591, 600–01 (2002) (alluding to the great-public-importance exception, particularly in light of a material lack of clarity in governing law); *Consumers Educ. and Protective Ass'n v. Nolan,* 470 Pa. 372, 383, 368 A.2d 675, 681 (1977) (declining to dismiss a declaratory judgment action on mootness grounds despite the expiration of the term for which one claiming the status of an administrative commissioner, explaining "we conclude that the [legal issue surrounding such claimant's entitlement to office] presents a question capable of repetition and of sufficient public importance that it ought not to escape appellate review at this time").

The judgment of the Commonwealth Court is reversed, and the case is remanded for further proceedings consistent with this Opinion.[14]

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

Justice GREENSPAN files a concurring opinion.

Justice GREENSPAN, concurring.

If the issue of whether the term "business" as used in the Ethics Act includes a "non-profit corporation" had arisen in the context of an actual investigation by the Ethics Commission and subsequent prosecution of former Secretaries Michael DiBerardinis and Kathleen McGinty then I would have wholeheartedly joined the majority opinion. However, as it did not, I must write separately because I believe that this case implicates an important prudential issue regarding judicial restraint, the case or controversy doctrine.[1] I realize that the parties have not discussed the application of the doctrine in their briefs. Nevertheless, I believe that, at a minimum, it

**14.** In response to Justice Greenspan's comments concerning the above order line, *see* Concurring Opinion, *op.* at 318 n. 10, 983 A.2d at 724 n. 10, it is not this Court's task to spell out for an intermediate appellate court or court of original jurisdiction all steps which must be taken when a case is returned to it after our review. Our foremost concern, here and elsewhere, is to address the arguments before us, rendering decision within the scope of the appeal as it reaches us, as we have done here. Here, as elsewhere, we have concluded by merely returning the matter to the court of original jurisdiction to accomplish whatever remains to be done. Presumably, the Commonwealth Court will formally enter judgment favorable to the State Ethics Commission consistent with this opinion and close the case.

**1.** In federal cases, the "case or controversy" doctrine has two sources: the United States Constitution and judicially self-imposed limitations that evolved on prudential grounds. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). By comparison, in Pennsylvania, the state constitution does not contain a case or controversy clause. *In re Hickson*, 573 Pa. 127, 821 A.2d 1238, 1243 n. 5 (2003). Nonetheless, the doctrine is well recognized in Pennsylvania and has been employed to control access to courts. *See In re Gross*, 476 Pa. 203, 382 A.2d 116, 119 (1978) (holding that a case or controversy must exist at all stages of litigation).

is appropriate and necessary for this Court to address the prudential limitations before reaching the substantive issues.[2]

Respectfully, I believe that this Court should vacate the Commonwealth Court's decision as that decision is, in my opinion, advisory. Neither the Ethics Act nor the Declaratory Judgment Act or this Court's jurisprudence permit the Commonwealth Court or this Court to issue advisory opinions.

**Remedy at law**

The Commonwealth Court's opinion is advisory for several reasons. To begin, former Secretary of the Department of Conservation and Natural Resources (DCNR) Michael DiBerardinis, former Secretary of the Department of Environmental Protection (DEP) Kathleen McGinty, and Governor Edward G. Rendell (collectively Appellees) did not assert any cognizable injuries for which the Commonwealth Court could provide a legal remedy. The judgment entered by the Commonwealth Court provides an academic answer to a hypothetical situation that had yet to happen at the time that the declaratory judgment action was filed.[3]

2. This Court has the authority to raise the issue of justiciability *sua sponte* where there is no case or controversy between the parties. *Pennsylvania R.R. Co. v. Pa. Pub. Util. Comm'n*, 396 Pa. 34, 152 A.2d 422, 424 (1959) (*sua sponte* vacating an order of the Superior Court on the ground that court had no jurisdiction to review agency regulation "where the regulatory impact of the rule had never been visited upon the appellant railroad"); *Pheasant Run Civic Org. v. Bd. of Comm'rs of Penn Township*, 60 Pa.Cmwlth. 216, 430 A.2d 1231, 1233 (1981) (holding that where there is no case or controversy ripe for judicial intervention "[a] court has the duty to raise, sua sponte if necessary, the issue of its power to hear an action, and the parties may not confer jurisdiction over a cause of action or the subject matter of an action by consent or agreement"); *Rich v. Commonwealth, Dept. of Gen. Servs.*, 130 Pa. Cmwlth. 71, 566 A.2d 1279, 1281 n. 6 (1989) (holding that the existence of a case or controversy is a jurisdictional issue that may be raised *sua sponte* by a court); *Ass'n of City Mgmt. and Prof'l Employees v. Civil Serv. Comm'n of City*, 721 A.2d 815, 818 (Pa.Cmwlth.1998), *appeal denied*, 559 Pa. 722, 740 A.2d 1149 (1999) (holding that a case or controversy inquiry is jurisdictional so court could raise it *sua sponte* ).

3. Indeed, the hypothetical events did not happen nor are they likely to happen because Mr. DiBerardinis and Ms. McGinty are no longer secretaries of the DCNR and DEP. The parties herein notified the Court and as a result the docket and caption of this case have been changed to reflect the substitution of the current secretaries, who obviously do not

Appellees provided the Commonwealth Court with the following hypothetical scenario and sought the opinion of that court as to whether they would be exposed to liability. In 2007, the spouses of Mr. DiBerardinis and Ms. McGinty were associated with non-profit entities. Ms. Joan Reilly, Mr. DiBerardinis's spouse, is a manager of the Pennsylvania Horticultural Society (PHS), while Dr. Karl Hausker, Ms. McGinty's spouse, was an independent contractor associated with Enterprising Environmental Solutions, Inc. (EESI). In the past, PHS applied for grants to the DCNR and EESI applied for grants to the DEP. Both entities expected but had not applied for grants to the respective departments by the time the present declaratory judgment was commenced in the Commonwealth Court. Mr. DiBerardinis and Ms. McGinty were expected to participate in the grant award processes of their respective departments but had not yet participated by the time the present declaratory judgment was filed in the Commonwealth Court.

Appellees filed an action in the Commonwealth Court seeking a declaration that, in the hypothetical scenario, Mr. DiBerardinis and Ms. McGinty would not have been violating the Ethics Act.[4] The decision depended on the interpretation of the term "business," as used in the Ethics Act so the parties asked the Commonwealth Court to issue an opinion on the meaning of the term.[5] In general, however, a judgment

have the alleged personal conflicts that instigated this lawsuit. Yet, the fact that neither the former secretaries nor the current litigants could receive any relief from this litigation does not appear to have any effect on the majority's discussion of the law. In my view, this is because the opinion deals with the legal issue in the abstract and any change in circumstances does not affect the legal analysis.

4. Appellees first sought the same relief from the Ethics Commission. The Ethics Commission, which is permitted by statute to issue advisory opinions, issued an opinion that Mr. DiBerardinis and Ms. McGinty would be exposed to liability if they were to act as in the hypothetical scenario. In addition to filing the declaratory judgment subject to this opinion, Appellees also appealed the Ethics Commission's advisory opinions. Because Appellees withdrew the appeals, only the declaratory judgment action remains before us.

5. In their declaratory judgment actions, Appellees raised a total of ten (10) issues, the majority of which required the interpretation of the

declaring the law based on a hypothetical scenario is not a remedy recognized under Pennsylvania law. *Philadelphia Entm't and Dev. Partners, L.P. v. City of Phila.*, 937 A.2d 385, 393 (2007) (holding that courts of the Commonwealth "should not give answers to academic questions or render advisory opinions or make decisions based on assertions as to hypothetical events that might occur in the future"). Indeed, such a declaration would amount to nothing more than an advisory opinion-an opinion that, like the advice of their own counsel, would merely alert Appellees to the legal consequences of possible future actions.[6]

Nor does the Ethics Act open the doors to the court for Appellees to seek such a remedy. *See* 65 Pa.C.S. §§ 1101–1113. Under the Ethics Act, state officials like Appellees may obtain an advisory opinion *from the Ethics Commission. See* 65 Pa.C.S. § 1107(10), (11). However, the Ethics Act contains no provisions allowing Appellees to obtain the same *in court.* Thus, the Ethics Act provides no statutory basis for recognizing the remedy sought by Appellees.

Finally, the Declaratory Judgment Act also does not provide Appellees with a remedy in this situation. According to the Declaratory Judgment Act, its purpose is "remedial." 42 Pa.C.S. § 7541(a). A "remedial law" provides "means to enforce rights or redress injuries." BLACK'S LAW DICTIONARY 1319 (8th ed.1999). As to the remedy, the Declaratory Judgment Act states that

> Any person interested under a deed, will, written contract, or other writings constituting a contract, *or whose rights, status, or other legal relations are affected by a statute,*

Ethics Act. The Commonwealth Court dismissed eight of the issues on the ground that these were not even supported by the hypothetical facts described by Appellees. *Rendell v. Pa. Ethics Comm'n*, 938 A.2d 554, 561 n. 6 (Pa.Cmwlth.2007). The Commonwealth Court issued a decision on the remaining two issues, which are the subject of this appeal, based on the hypothetical facts.

**6.** The majority recognizes that the Ethics Commission opinions issued to Appellees were advisory. Maj. Op. at 295-98, 983 A.2d at 710-11. Appellees were in the same procedural posture before the Commonwealth Court as they were before the Ethics Commission; therefore,

municipal ordinance, contract, or franchise, *may have determined any question of construction* or validity *arising under the* instrument, *statute,* ordinance, contract, or franchise, *and obtain a declaration of rights, status, or other legal relations thereunder.*

42 Pa.C.S. § 7533 (emphasis added).

Under the plain language of the statute, only persons who *"are* affected by a statute," the Ethics Act here, may seek a declaratory judgment. 42 Pa.C.S. § 7533 (emphasis added). The Declaratory Judgment Act does not provide a remedy to persons who *will be* or, even more remotely, *may be* affected by the statute.

As noted above, Appellees here sought a declaration from the Commonwealth Court that the term "business" as used in the Ethics Act did not include non-profit corporations. The expressed harm for which Mr. DiBerardinis and Ms. McGinty sought a "declaration"—the Declaratory Judgment Act remedy—was that they feared civil or criminal prosecution for engaging in the described conduct. The harm described by Governor Rendell was that he was "denied the right to have the official of [his] choosing carry out [the duties and responsibilities of secretary]." Appellees' Reply Brief at 1; *see also* Appellees' Brief at 17.

Respectfully, in my opinion, the expressed harms were not present but future, hypothetical harms for which the Declaratory Judgment Act does not provide relief. *See* 42 Pa.C.S. § 7533. After all, Mr. DiBerardinis and Ms. McGinty had not engaged in the hypothetical conduct by the time the declaratory judgment action was filed (nor would they ever engage in that conduct) and Governor Rendell was not deprived of their services. The Declaratory Judgment Act does not provide a remedy when only a potential injury is averred. 42 Pa.C.S. § 7533.[7] Thus, because Appellees asserted only a potential

logic dictates that the Commonwealth Court's opinion is equally advisory.

7. I recognize that the majority opinion is in line with a view that its author has expressed in the past that the "primary and direct purpose of the Declaratory Judgment Act ... was to authorize courts to grant declaratory relief in the face of objections that such relief represented the giving of advisory opinions rather than the adjudication of contro-

injury in their declaratory judgment action, I would hold that the Commonwealth Court issued an advisory opinion that should be vacated. *See Gulnac v. South Butler Cnty. Sch. Dist.*, 526 Pa. 483, 587 A.2d 699, 702 (1991) (holding that "[a] declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic"); *Pennsylvania Railroad Co., supra*.[8]

versies." *Nationwide Mutual Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813, 819 (2000) (Saylor, J. dissenting); *see also Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 663–664 (2005) (Saylor, J. dissenting). This Court, however, recently and specifically rejected that position in *Pittsburgh Palisades Park*. 888 A.2d at 661 n. 4; *see also Vale Chem. Co. v. Hartford Accident and Indem. Co.*, 512 Pa. 290, 516 A.2d 684, 687 n. 2 (1986) (noting that "[a]lthough the Declaratory Judgment Act relaxes the traditional requirement that a case or controversy must involve an existing dispute, it does not, and could not, permit the entry of an advisory opinion").

8. Further, I do not believe that this Court should implicitly overrule the long line of Pennsylvania Supreme Court decisions that have denied parties relief in the form of advisory opinions under the Declaratory Judgment Act. *Pittsburgh Palisades Park*, 888 A.2d at 661 n. 4; *Vale Chem. Co.*, 516 A.2d at 687 n. 2; *Gulnac*, 587 A.2d at 702; *Pa. State Lodge of Fraternal Order of Police v. Commonwealth*, 131 Pa.Cmwlth. 611, 571 A.2d 531, 532 (1990), *affirmed*, 527 Pa. 363, 591 A.2d 1054 (1991) ("[d]eclaratory judgment is not appropriate to determine rights in anticipation of events which may never occur; it is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation"). First, the parties do not offer any arguments in support of such a position. Second, such a decision would be a drastic departure from traditional prudential standards that should not be undertaken implicitly. Rather, if this Court were to decide to overrule these decisions, it should do so openly so as to put the public on notice of this avenue of relief. I suspect that there are numerous persons who would welcome an opportunity to obtain an advisory opinion from courts of the Commonwealth on various legal topics.

In my opinion, the legislature's policy of limiting relief under the Declaratory Judgment Act to persons who are presently affected is sound. First, it is the role of the legislature and not of the courts to set forth the Commonwealth's public policy. By issuing opinions in a vacuum, without an actual controversy between parties, the courts would be interfering with the legislature's role. Second, broad opinions issued in a vacuum, as advisory opinions necessarily are, cannot consider the true implications and possible exceptions that may arise if interested parties appear before the court. One need only look at *In re Nomination Pet. of Carroll*, 586 Pa. 624, 896 A.2d 566 (2006), cited by

## Mootness

In the alternative, this Court should dismiss this action as moot because Ms. McGinty and Mr. DiBerardinis are no longer secretaries of the DEP and DCNR, as reflected by the docket and in the caption. *Commonwealth v. Kallinger,* 532 Pa. 292, 615 A.2d 730 (1992) (*sua sponte* dismissing appeal as moot). Because the present litigation was precipitated by circumstances personal to the former secretaries, their successors cannot claim to have a personal interest in this matter. Further, given that the secretaries with potential conflicts of interest described in this case are no longer in office, the Governor also no longer faces his alleged harm—not being able to use the services of his chosen secretaries in certain grant review processes.

Appellees do not raise any arguments as to why we should make an exception here to the prudential limitation against court review of moot cases. *See Commonwealth v. Dixon,* 589 Pa. 28, 907 A.2d 468, 472–73 (2006) (holding that "an appellate court may decide a case where issues important to the public interest are involved, the nature of the question under consideration is such that it will arise again, and review will be repeatedly thwarted if strict rules of mootness are applied"). Also, there is no reason to believe that the issue subject to this appeal is capable of repetition and would escape review if not decided here. In the event that this scenario was to occur again, the secretary involved could conform to the Ethics Commission's advisory opinion or challenge it in a prosecution for a violation.[9] Therefore, we should at least refrain from

the Majority to see that the application of the law differs depending on the context of a controversy. Finally, the case or controversy doctrine is an important tool for preserving judicial resources and ensuring that cases brought by persons who are immediately affected receive the appropriate attention from courts.

9. By my reading, this is the procedure for challenging Ethics Act requirements. If those persons who fall under the purview of the Ethics Act (i.e., public officials) wish to change the requirements or the procedure, they should apply to the legislature for such amendments and not to the courts. I recognize that the Ethics Act places a higher burden of disclosure and conduct on public officials than on other Pennsylvanians. These public officials have some relief in the form of

issuing an advisory opinion and dismiss these declaratory judgment actions as moot.

**Conclusion**

Because I believe that the Commonwealth Court erroneously reached the merits of the Appellants' declaratory judgment action where it should have dismissed it for lack of justiciability, I would vacate the Commonwealth Court's decision. *See Gulnac*, 587 A.2d at 702 (vacating lower court opinion that improperly reached the merits of a non-justiciable action).[10]

advice from the Ethics Commission, which has a duty to interpret the Ethics Act prior to any violation. The Ethics Act does not place the same duty on courts. Indeed, courts have no authority to issue advisory opinions under the Ethics Act and are otherwise prohibited from doing so on prudential grounds. There is no reason to make an exception to the rule against issuing advisory opinions for public officials simply because of their positions. These public officials knew the conduct and disclosure obligations of elected office and, arguably, may be in a better position than other Pennsylvanians to change these requirements by appealing to the legislature.

10. The majority opinion reverses and remands to the Commonwealth Court for further proceedings. It is unclear to me what further action the Commonwealth Court could take or what relief it could provide to the Governor or to John Quigley and John Hanger, the newly appointed acting secretaries who replaced Ms. McGinty and Mr. DiBerardinis at the DCNR and DEP. In addition to the pragmatic issue, a remand highlights the justiciability problems in this matter. *See Stilp v. Commonwealth*, 910 A.2d 775, 781–82 (Pa.Commw.2006) (dismissing action against the Governor on the ground that no case or controversy existed between the parties because petitioner did not aver a manifest wrong by the Governor).